

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| SHANE ADAM CARTER, | ) | |
| | ) | |
| Respondent, | ) | WD77518 |
| | ) | |
| v. | ) | OPINION FILED:  February 17, 2015 |
| | ) | |
| DIRECTOR OF REVENUE, STATE | ) | |
| OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Louis Angles, Judge

Before Special Division:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

The Director of Revenue ("Director") appeals a trial court judgment setting aside the revocation of Shane Adam Carter's ("Carter") driving privileges.  Director argues that the trial court erred in excluding the results of Carter's breath test for the stated reason that the breath testing device was not properly calibrated pursuant to a Department of Health and Senior Services ("DHSS") regulation in effect at the time of Carter's arrest. Because a separate legal rationale established by the record and not challenged by the

Director independently supports the trial court's determination that it could not consider the results of Carter's breath test, we affirm.

## Factual and Procedural History[1]

On June 16, 2013, Carter was driving north on Highway 169 when he encountered a DWI checkpoint just north of N.W. Vivian Road in Kansas City, Missouri. An officer approached Carter, smelled alcohol coming from Carter and his car, and noticed that Carter's eyes were watery, bloodshot, and glassy. Carter admitted to consuming alcohol that day. The officer administered field sobriety tests to Carter and then placed Carter under arrest. Carter was taken to a mobile station at the DWI checkpoint and agreed to take a breath test. The officer conducted a breath test using an Alco-Sensor IV breath testing device. The test showed a blood alcohol content ("BAC") of .170 percent.

Carter was notified that his license and privilege to operate a motor vehicle were subject to administrative sanction pursuant to section 302.520 since his BAC exceeded the permissible statutory limit of .08 percent. Carter timely challenged the administrative sanction through the appeal process set forth in section 302.530.[2] A hearing examiner affirmed the decision to revoke Carter's driving privileges, effective November 8, 2013. Carter requested a trial *de novo* as provided by section 302.535.

A trial was conducted on March 31, 2014. The trial court took judicial notice of 19 C.S.R. 25-30.051, the DHSS regulation governing the use of breath testing devices. With the arresting officer on the stand, the Director offered into evidence a June 4, 2013,

---

[1]"We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Blue Ridge Bank & Trust Co. v. Trosen*, 309 S.W.3d 812, 815 (Mo. App. W.D. 2010) (internal quotations omitted).
[2]All statutory references are to RSMo 2000, as supplemented, unless otherwise noted.

2

maintenance report for the Alco-Sensor IV device used to test Carter to establish that the device had been properly verified and calibrated pursuant to 19 C.S.R. 25-30.051. Carter objected and argued that the maintenance report and Carter's breath test results should be excluded because 19 C.S.R. 25.30.051(2) requires breath test instruments to be verified and calibrated using standard simulator solutions at three different vapor concentration levels, whereas the instrument used to take his breath test had only been verified and calibrated at one vapor concentration level. The Director responded that read as a whole, the DHHS regulations regarding breath test devices only require the use of one solution during calibration and verification of the breath testing device. The trial court overruled Carter's objection and admitted the maintenance report into evidence.

The Director then asked the officer to describe the result of Carter's breath test. Carter again objected on the additional ground that there was no evidence that the device used to take his breath test had been certified pursuant to 19 C.S.R. 25-30.051(4). In response, the Director offered a certification report that indicated that the breath testing device used to take Carter's breath test had been calibrated on February 26, 2014, using testing standards traceable to the National Institute of Standards and Technology ("NIST") in accordance with 19 C.S.R. 25-30.051(4). The trial court admitted the certification report into evidence. The officer was then permitted to testify that Carter's BAC as calculated on the device was .170 percent. At the conclusion of the trial, the trial court took the matter under advisement.

On April 1, 2014, the trial court entered a judgment, findings of fact, and conclusions of law ("Judgment") setting aside the revocation of Carter's driving

3

privileges. The trial court found that the Director's evidence was credible and that probable cause existed to arrest Carter for an alcohol-related offense. The trial court found, however, that there was insufficient evidence to admit the BAC test results due to "improper calibration of breath analyzer and accuracy verification" per 19 C.S.R. 25-30.051(2) and (5) as required on the date of the test. The Judgment made no reference to the certification required by 19 C.S.R. 25-30.051(4). The Director and Carter filed post-trial briefs, reiterating the arguments each made regarding the admissibility of the breath testing device's maintenance report and certification report. The trial court overruled the Director's motion to set aside the judgment.

The Director timely appealed.

## Standard of Review

A trial court's judgment in a driver's revocation case is reviewed as any court-tried civil case. *Zahner v. Dir. of Revenue, State*, 348 S.W.3d 97, 100 (Mo. App. W.D. 2011). "We will affirm a judge-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *First Banc Real Estate, Inc. v. Johnson*, 321 S.W.3d 322, 329 (Mo. App. W.D. 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)). In a court-tried case the judge is permitted wide latitude in the reception of evidence and is presumed to have considered only proper evidence in reaching a judgment. *Shoemaker v. Shoemaker,* 812 S.W.2d 250, 256 (Mo. App. W.D. 1991). "This court is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Trosen*, 309 S.W.3d at 815 (internal quotes omitted). "Even where the trial court's reasoning is

4

wrong or insufficient, if the correct result was reached, we must affirm." *Johnson*, 321 S.W.3d at 329.

## Analysis

The Director asserts two points on appeal. The Director asserts that the trial court erred in excluding[3] Carter's breath test results because: (1) the version of 19 C.S.R. 25-30.051(2) in effect at the time of Carter's arrest only required the use of one standard simulator solution of the three listed when performing maintenance to verify and calibrate the breath testing device; and (2) even if the version of 19 C.S.R. 25-30.051(2) in effect at the time of Carter's arrest did require the use of all three solutions, that version of the regulation was superseded by the version of 19 C.S.R. 25-30.051(2) in effect at the time of Carter's trial, which only requires the use of one solution when performing maintenance to verify and calibrate breath testing devices. Carter responds that the trial court correctly refused to consider his breath test results because: (1) 19 C.S.R. 25-30.051(2) in effect at the time of his arrest required three solutions to be used when performing maintenance to verify and calibrate the breath testing device used to test him; (2) the version of 19 C.S.R. 25-30.051(2) in effect at the time of his trial did not apply retrospectively to his case; and (3) in any event, the breath testing device used to test him was not properly certified pursuant to 19 C.S.R. 25-30.051(4). Because we agree that the

---

[3]The Director's two points on appeal, which claim that the trial court erred in "excluding" the results of Carter's breath test results, are technically inaccurate. The trial court did not exclude the results of Carter's breath test but instead admitted evidence of Carter's BAC over Carter's objections. In its judgment, however, the trial court effectively found that it should not have admitted Carter's BAC test results into evidence, and, thus, (implicitly) found that it could not rely on the test results. Though the Director's points on appeal claim error in the "exclusion" of evidence, it is clear that the Director is challenging the trial court's post-trial determination that it could not consider the results of Carter's breath test. Because a "judge in a court-tried case is presumed to have considered only proper evidence in reaching a judgment," *Shoemaker*, 812 S.W.2d at 256, we read the Director's points on appeal accordingly, and proceed to the merits of the appeal.

5

breath testing device used to test Carter was not properly certified pursuant to 19 C.S.R. 25-30.051(4), and because the Director does not challenge this independent basis supporting the Judgment on appeal, we affirm the Judgment and decline to resolve the issues presented by the Director's points relied on.[4]

"The Director has the burden of proof to establish by a preponderance of evidence that probable cause existed to arrest [a] driver for driving while intoxicated and that an evidentiary breath test determined the driver's BAC was beyond the legal limit." *Raisher v. Dir. of Revenue*, 276 S.W.3d 362, 364 (Mo. App. W.D. 2009). "To introduce evidence of the defendant's BAC, the Director must lay a separate foundation showing the police conformed to the requirements in the Code of State Regulations." *Hill v. Dir. of Revenue State of Mo.*, 985 S.W.2d 824, 827 (Mo. App. W.D. 1998). "In laying the foundation the Director must show the breath analyzer test was performed (1) by following the approved techniques and methods of the Division of Health, (2) by an operator holding a valid permit, and (3) using equipment and devices approved by the Division." *Id.* "The provisions that must be followed to satisfy the foundational requirements are set forth in 19 C.S.R. 25-30." *Id.*

> 19 C.S.R. 25-30.051 states, in pertinent part:
>
> PURPOSE: This rule defines the standard simulator solutions or compressed ethanol-gas mixtures to be used in verifying and calibrating breath analyzers, *as well as the annual checks required on simulators* used in conjunction with the standard simulator solution.

---

[4]The issues framed by the Director on appeal, and that we do not reach in our Opinion, are the subject of discussion in two decisions recently handed down by our Eastern and Southern Districts. *See Stiers v. Dir. of Revenue*, No. ED101407, 2015 WL 343310 (Mo. App. E.D. January 27, 2015); *Riggins v. Dir. of Revenue*, No. SD33368, 2015 WL 452440 (Mo. App. S.D. January 27, 2015).

. . .

> (4) Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule ***shall be certified*** against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple ***between January 1, 2013, and December 31, 2013, and annually thereafter***.

(Emphasis added.)

The Director's evidence did not establish that the aforesaid regulation regarding certification of breath test devices was followed. Both at the time of Carter's arrest and at the time of trial, 19 C.S.R. 25-30.051(4) required that a breath testing device had to be certified against a NIST thermometer or thermocouple in 2013, and annually thereafter, if standard simulator solutions listed in 19 C.S.R. 25-30.051(2) were used to verify and calibrate the device. The device used to test Carter was in use in 2013 (Carter was tested with it on June 16, 2013) and was subject to maintenance on June 4, 2013, with one of the solutions listed in 19 C.S.R. 25-30.051(2). The plain language of 19 C.S.R. 25-30.051(4) thus required the device to be certified against a NIST thermometer or thermocouple sometime between January 1, 2013 and December 31, 2013, and annually thereafter. The Director only provided evidence of NIST certification in 2014, specifically on February 26, 2014. The Director provided no evidence of NIST certification in 2013. Because the Director must establish compliance with the DHHS regulations to lay foundation for the admission of BAC results, the trial court properly concluded that it should not have admitted Carter's breath test results, albeit for a reason other than that expressed in the Judgment.

In its Reply Brief, the Director misconstrues Carter's argument to be that the NIST certification required by 19 C.S.R. 25-30.051(4) had to occur *before* 19 C.S.R. 25-30.051(2) maintenance was performed on June 4, 2013. Carter does not make this argument and instead simply argued at trial and again on appeal that the Director failed to demonstrate compliance with 19 C.S.R. 25-30.051(4). As the Director observes in his Reply Brief, 19 CSR 25-30.051(4) "clearly specifie[s] that law enforcement agencies would have a full calendar year to complete the *first* NIST certification of any breath alcohol simulator." The Director thus concedes that 19 C.S.R. 25-30.051(4) certification was required for the device used to test Carter at some point during 2013. The Director offered no evidence, however, that the device used to test Carter was subjected to 19 C.S.R. 25-30.051(4) certification during 2013.[5]

The trial court correctly concluded that it could not consider the results of Carter's breath test. It is immaterial that the trial court's Judgment failed to make reference to 19 CSR 25-30.051(4). "Even where the trial court's reasoning is wrong or insufficient, if the correct result was reached, we must affirm." *Johnson*, 321 S.W.3d at 329.

---

[5]During oral argument, the parties pointed out the phrase "annually thereafter" in 19 C.S.R. 25-30.051(4) is subject to different constructions. The phrase could be interpreted to permit the Director the full calendar year to conduct each annually required certification. Or it could be interpreted to require the initial certification in 2013, then an annual certification thereafter on or before the anniversary date of the initial certification. We need not address the proper construction of "annually thereafter" as used in 19 C.S.R. 25-30.051(4). Regardless when a NIST certification must be "annually thereafter" performed, it is plain that in this case, a certification was required at some point in 2013, and that the Director failed to establish that a certification occurred at anytime during 2013.

8

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur.