

# In the Missouri Court of Appeals
## Western District

GRANT LOUIS MESSNER,          )
              Respondent,  )
v.                        )        WD77506
                        )
DIRECTOR OF REVENUE,      )      FILED: July 21, 2015
              Appellant.  )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE ROBERT L. TROUT, JUDGE

### BEFORE DIVISION THREE; KAREN KING MITCHELL, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

The Director of Revenue appeals a circuit court judgment reinstating Grant Messner's driving privileges following an administrative suspension for driving while intoxicated. The Director contends the judgment is unsupported by substantial evidence and erroneously applies the law. For reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

On June 20, 2013, at approximately 1:30 a.m., Officer Daniel Lawrence observed Grant Messner's vehicle weaving and crossing the center line of the road. Officer Lawrence stopped the vehicle and immediately smelled the odor of alcohol

emanating from Messner. After Messner failed several field sobriety tests, Officer Lawrence arrested him for driving while intoxicated (DWI).

Messner was taken to the Lake Lotawana police station. After observing Messner for a minimum of 15 minutes to ensure that no smoking or oral intake of any material occurred, Officer Lawrence attempted to administer a breath test on the Intoxilyzer 5000. The device printed an evidence ticket at 2:17 a.m. which read: "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE." A few minutes later, Officer Lawrence administered another test. The device printed an evidence ticket at 2:21 a.m. which reported a result of .166% as Messner's blood alcohol content (BAC).

After an administrative hearing, the Director suspended Messner's driving privileges pursuant to Section 302.505, RSMo.[1] Messner filed a petition for trial de novo in the circuit court as provided by Section 302.535.

During the trial de novo, the Director presented certified records from the Department of Revenue's file, including Officer Lawrence's narrative incident report, the Alcohol Influence Report, and the evidence ticket from the second breath test showing Messner's BAC at .166%. The records did not include the "invalid test" printout generated from the first breath test attempt and there was no mention of the first attempt in Officer Lawrence's reports. Likewise, Officer Lawrence did not mention the first attempt during his direct testimony.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement, unless otherwise indicated.

On cross-examination, Officer Lawrence acknowledged that the additional breath test had been administered but was left out of his reports and direct testimony. Officer Lawrence said that on his first attempt to obtain a breath sample, Messner was "either refusing or arguing" and that the machine "timed out" as Messner had not blown into the machine. Officer Lawrence testified that he inadvertently omitted this information from his reports.

Messner offered as evidence the printout from the first attempt to obtain a breath sample, which showed the error message "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE." He also offered as evidence the operator's manual for the Intoxilyzer 5000. Contrary to Officer Lawrence's assertion that the device timed out, Messner testified that he did, in fact, blow into the machine the first time the test was administered which resulted in the "INVALID TEST – SUBJECT DID NOT PROVIDE A VALID SAMPLE" error message. Messner's counsel pointed out that had the machine actually timed out as Officer Lawrence claimed, it would have displayed "INSUFFICIENT TEST" as indicated on page 9 of the operator's manual.

Because the evidence showed that Messner did not provide a valid breath sample on the first attempt, his counsel argued that Officer Lawrence was required to conduct a second 15-minute observation period between the two test attempts, and that his failure to do so rendered the second test results unreliable. The Director argued that the manual only specifically required the officer to wait an additional 15 minutes after the device generated an "invalid sample" reading, but

3

that no such period was mentioned in the manual in connection with an "invalid test" reading.[2]

Following the trial de novo, the circuit court issued a judgment reinstating Messner's driving privileges.  In its findings of fact and conclusions of law,  the court found that the Director's evidence was "not credible, in that [the] second breath test result was not reliable as there was no 15 minute observation period after Intoxilyzer 5000 generated message of 'INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE' on first test."  The court further stated that "Officer's actions contradicted Intoxilyzer 5000 operator's manual."   The Director appeals.

## STANDARD OF REVIEW

We review the trial court's judgment in a Section 302.535 license suspension case as in any other court-tried civil case.  *Johnson v. Dir. of Revenue*, 411 S.W.3d 878, 881 (Mo. App. 2013).  We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010).  To set aside a judgment as against the weight of the evidence, we must have a firm belief that the judgment is wrong. *Id.* at 308.  Where the facts relevant to an issue are contested, we give deference

---

[2] Page 10 of the manual contains a table with explanations for various error messages the device might display and the corresponding corrective action the officer is to take to remedy the error.  If the device displays the "INVALID SAMPLE" error code, the explanation/corrective action table states "Check mouth, wait an additional 15 minutes, try one or more tests."  For the "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE" code that was generated from Messner's first attempt, the table states, "A complete and valid breath sample was not provided in the time allotted."  However, as explained *infra,* the table on page 10 does not specify the corrective action to be taken in the event the device generates this particular "invalid test" error message.

4

to the circuit court's assessment of that evidence. *Bruce v. Dep't of Revenue*, 323 S.W.3d 116, 119 (Mo. App. 2010). "A trial court is free to disbelieve any, all, or none of that evidence." *Johnson*, 411 S.W.3d at 881 (citation omitted).

## ANALYSIS

In Point I, the Director contends the judgment must be reversed because there is no substantial evidence to support the circuit court's finding that Officer Lawrence's actions contradicted the operator's manual for the Intoxilyzer 5000. However, as Messner points out, the Director had the burden of proof but failed to present credible evidence that the Officer's actions complied with the manual. Based on the court's credibility finding that the Officer did not act properly, we find no error in its determination that the breath test results were unreliable.

To suspend Messner's license, the Director is required to "present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent." *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 447 (Mo. App. 2013). The Director has the burden of establishing the grounds for revocation or suspension by a preponderance of the evidence and "may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit." *Id.*

In this case, there was no dispute that the Director met the burden of proving the probable cause element. The Director further sought to prove that Messner's BAC exceeded the legal limit by presenting the results from his second

5

breathalyzer test. Messner challenged the reliability of the second test by arguing that Officer Lawrence failed to conduct another 15-minute observation period after the first breath test attempt failed. The circuit court agreed that the test results were unreliable because the "Officer's actions contradicted [the] Intoxilyzer 5000 operator's manual."

The Director argues that this finding is unsupported by the evidence because the manual only recommends an additional 15-minute observation period when the device generates the "INVALID SAMPLE" error message. The Director points out that the initial test generated the "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE" error message, for which the manual does not specifically require an additional 15-minute observation period.

We observe that the operator's manual is silent as to what corrective action should be taken when the Intoxilyzer 5000 generates the "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE" error message. On page 10 of the manual, under the "Explanation and Corrective Action" column, it reads only that "[a] *complete* and *valid* breath sample was not provided in the time allotted." (Emphasis added). Aside from defining the error message, the manual does not explain the action to be taken by the officer to correct such a reading. By contrast, the manual gives detailed steps the officer should follow in the event that the "INVALID SAMPLE" error message is generated.

A similar lack of guidance as to the proper corrective action was addressed in *Martin v. Dir. of Revenue*, 142 S.W.3d 851 (Mo. App. 2004). In *Martin*, the

6

initial breath test of a driver registered an "invalid sample." *Id.* at 853. The officer then gave the driver a second test less than five minutes after the first. *Id.* at 854. At the time, the relevant Missouri regulations were silent as to what procedure should be followed when an "invalid sample" reading was obtained. *Id.* Under those circumstances, the trial court heard expert testimony from both parties as to whether an additional 15-minute observation period was required after the initial "invalid sample" reading to ensure that mouth alcohol had time to dissipate. *Id.* at 855–57. The trial court found Director's evidence less credible than the driver's, and that an additional 15-minute observation period was required to ensure the reliability of the test results. *Id.* at 857. On appeal, the Southern District held that the "trial court's determinations were within the prerogative afforded it as the trier of fact." *Id.*

Here, as noted, the table on which Director relies (for the proposition that no 15-minute observation period is required) is silent as to what action should be taken when the "INVALID TEST – SUBJECT DID NOT PROVIDE VALID SAMPLE" error message is displayed. Neither Messner nor the Director introduced expert testimony regarding whether such an error message would require an additional observation period to ensure the reliability of subsequent breath tests. The Director merely pointed to the table on page 10 to establish that the manual did not specifically recommend a 15-minute observation period under these circumstances. Messner elicited testimony from Officer Lawrence that had the machine actually timed out as he claimed, it would have instead displayed the "INSUFFICIENT TEST"

7

error message.  The Director had the opportunity to present testimony from an officer holding a Type II permit to explain this discrepancy, but failed to do so.  The Director bears the burden of production and persuasion in driver's license suspension cases.  *White*, 321 S.W.3d at 304.  After considering the evidence presented from both parties, the circuit court concluded that the Director's evidence was not credible.  "Because [Messner] bore neither the burden of persuasion nor production in this proceeding, the judgment in [his] favor required no evidentiary support."  *Johnson*, 411 S.W.3d at 885.

Even if the Director had presented evidence to explain any distinctions or discrepancies among the error messages on page 10 of the manual, there is another provision of the Intoxilyzer 5000 manual that supports the court's credibility determination regarding the Officer's actions.  On page 7, the manual recommends that the officer "should complete an Operational Checklist for *each* separate test conducted."  (Emphasis added).  The second step of that checklist is that the subject be observed for at least 15 minutes.  Because the trial court was free to infer from the conflicting testimony that two tests were administered, *see Bruce*, 323 S.W.3d at 119, the manual's plain language suggests that two checklists should be completed and, thus, two separate 15-minute observation periods.  By failing to complete an additional observation period, Officer Lawrence's actions contradicted this portion of the Intoxilyzer 5000 operator's manual that

8

requires a checklist to be completed for *each* test.[3] Accordingly, the court's finding

that the breath test results were unreliable is supported by substantial evidence in

the record. Point I is denied.

In Point II, the Director argues that the circuit court erroneously declared or

applied the law because no additional 15-minute observation period is legally

required by recently amended DHSS[4] regulations or the Intoxilyzer 5000's

operator's manual. Based on our holding in Point I, we conclude that the court did

not err in applying the provisions of the operator's manual because the manual

could be interpreted to require an observation period for *each* test. With regard to

the DHSS regulations, we further conclude that the recent amendments cited by

the Director are not instructive because they relate only to the admissibility of

breathalyzer tests and not the reliability of the testing procedure or results.

Section 577.026.1 provides that breath tests, "to be considered

valid . . . shall be performed according to methods and devices approved by the

[DHSS]." From this statute, the Director argues that because the DHSS has the

sole authority to create regulations regarding testing methods, "the trial court

---

[3] Citing *Smock v. Dir. of Revenue*, 128 S.W.3d 643 (Mo. App. 2004), the Director argues that Messner's multiple attempts to complete a breath test are considered to be only one test under Missouri law. However, *Smock* is inapposite, as it involved the application of Section 577.020.2, which provides for a driver's implied consent to "not more than two" chemical tests. The driver had twice unsuccessfully attempted to complete a *breath* test. *Id.* at 645. The driver then refused to submit to a *blood* test. *Id.* In upholding the driver's license suspension, the Southern District concluded merely that the officer was authorized to request more than one *type* of statutory test—the two failed breath test attempts were considered one type of test for purposes of Section 577.020.2. Here, the Intoxilyzer 5000 operator's manual is concerned only with the administering of the *breath* test, and no other type of test authorized by statute. Accordingly, it recommends that the officer complete an operational checklist for each separate breath test conducted. Moreover, the Intoxilyzer 5000 operational checklist would have no applicability to a subsequent *blood* test, as ensuring the absence of mouth alcohol would have no effect on the results of the test.

[4] DHSS is the Missouri Department of Health and Senior Services.

9

should not need to look elsewhere to determine whether a test is valid." In other words, as long as the officer complies with the DHSS regulations, the BAC test results are not only admissible, but also credible. However, such an argument relies upon a presumption that the Director's evidence is true. This appears to be an improper attempt to revert to the standard applied to driver's license suspension cases before the Missouri Supreme Court decided *White v. Dir. of Revenue*, 321 S.W.3d 298 (Mo. banc 2010). Before *White*, courts gave the Director's uncontroverted evidence a presumption of validity, requiring the driver to present affirmative evidence to rebut that presumption. *Id.* at 306. In *White*, however, the Court eliminated this presumption, confirming that the burden of proof was on the Director. *Id.* at 304.

> The director's burden of proof has two components—the burden of production and the burden of persuasion. The burden of production is a "party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling . . ." The burden of persuasion is defined as "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party."
> . . .
> When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party.

*Id.* at 304–05 (citations omitted). Thus, under *White*, "there is no presumption that the Director's evidence establishing a *prima facie* case is true, and there is no burden shifted to the driver to produce evidence to rebut such a presumption." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 829 (Mo. App. 2012). To the extent

10

the Director relies upon the presumed validity of her evidence, her argument should be rejected.

In any event, even if we were to look only to the amended DHSS regulation cited by the Director, 19 C.S.R. 25-30.060(7), it would be of no benefit in this case. In relevant part, this regulation provides that a 15-minute observation period "is deemed to be sufficient for the dissipation of any mouth alcohol to a reasonable degree of scientific certainty." Our courts have recognized that this regulation sets forth the procedures to be followed to satisfy the *foundational requirements* for admission of the breath test results. *O'Rourke*, 409 S.W.3d at 447. Thus, the Director's argument that the DHSS regulations do not require an additional 15-minute observation period in order for the test results to be valid is misdirected because it "conflates the admissibility of evidence with the credibility of evidence." *Johnson*, 411 S.W.3d at 883. Here, there is nothing in the record to indicate that the trial court excluded the .166% BAC test results from evidence. "Instead, it appears the trial court simply did not believe that result was reliable. As noted above, we defer to that factual determination." *Id.*

Finally, the Director argues that previous cases recognizing that the trial court was free to determine the credibility of the test results, even if they were obtained in accordance with DHSS regulations, should be reexamined in light of this recent amendment to the DHSS regulations. The Director points out that the amended regulation, which became effective on December 30, 2012, explicitly defines the purpose of the initial 15-minute observation period as ensuring "to a

11

reasonable degree of scientific certainty" that any mouth alcohol has a chance to dissipate. From this language, the Director asserts that trial courts can no longer find a test result to be scientifically unreliable if an initial 15-minute observation period has been performed. However, it appears that the Director is again attempting to assert that her evidence is entitled to a finding of credibility as a matter of law, in contravention of our Supreme Court's holding in *White* eliminating such a presumption.[5] Furthermore, the Director's argument again conflates the admissibility of evidence with the weight to be afforded that evidence. "[E]ven if the results of a breathalyzer test may be admissible, *as with any scientific test*, it is still the job of the finder of fact to determine the test result's credibility or reliability." *Collins v. Dir. of Revenue*, 399 S.W.3d 95, 104 (Mo. App. 2013) (Witt, J., concurring) (emphasis added).

Here, the Director made a *prima facie* case but Messner contested the validity of the Director's evidence. Under *White*, no presumption arose that the Director's evidence was true. The Director had the burden to produce evidence and persuade the circuit court that her evidence was true. After evaluating the evidence, the circuit court found that the Director's evidence was not reliable because the BAC test results were obtained without an additional 15-minute

---

[5] Moreover, the regulation's stated purpose for the amendment reads: "Prosecuting attorneys have requested that these procedures be included as a rule so they can be introduced in court to show that operators of breath analyzers have adhered strictly to the operating procedures set forth and approved by [DHSS]." 2012 MO REG TEXT 297025 (NS). Whether the officer "adhered strictly to the operating procedures" is primarily relevant for purposes of the Director laying a proper foundation for the admission of the breath test results. *See Collins v. Dir. of Revenue*, 399 S.W.3d 95, 99–100 (Mo. App. 2013).

12

observation period to confirm the dissipation of mouth alcohol.  In so doing, the trial court did not erroneously declare or apply the law.  Point II is denied.

## CONCLUSION

We affirm the circuit court's judgment reinstating Messner's driving privileges.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.