

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| AMANDA HARRELL, | ) | |
| | ) | |
| Respondent, | ) | WD78670 |
| | ) | |
| v. | ) | OPINION FILED: May 3, 2016 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Karen L. Krauser, Judge

Before Division Three: Gary D. Witt, Presiding Judge, James E. Welsh, Judge and
Anthony Rex Gabbert, Judge

The Director of Revenue (the "Director") appeals a trial court judgment setting aside the revocation of Amanda Harrell's ("Harrell") driving privileges. The Director argues that the trial court erred in excluding the results of Harrell's blood alcohol test. The trial court excluded the test because it found that the Director failed to show that the simulator used to test the breath analyzer had been calibrated against a National Institute of Standards and Technology ("NIST") approved thermometer in connection with the simulator's maintenance, as required by the Department of Health and Senior Services ("DHSS"). Specifically, records were not produced at trial to show maintenance during

the 2014 calendar year. The Director also challenges the exclusion of the results based on illegible printouts of the breath analyzer machine's maintenance simulator tests. We reverse and remand.

## Facts and Procedural History[1]

On April 6, 2014, Highway Patrol Trooper Jeffrey Huff stopped Harrell for speeding. Huff testified that he smelled alcohol and Harrell showed signs of intoxication. He administered a series of field sobriety tests. Huff then arrested Harrell for driving while intoxicated and took her to the Clay County Detention Center. Huff then read Harrell the implied consent law and administered a blood alcohol content test, which showed Harrell's BAC to be .122%.

Harrell was given a written notice of suspension or revocation of her driving privileges because of her arrest on probable cause of driving a motor vehicle with a blood alcohol content ("BAC") above the legal limit. Harrell timely challenged the administrative sanction through the appeal process set forth in section 302.530.[2] A hearing examiner affirmed the revocation of Harrell's driving privileges. Harrell timely filed for a trial *de novo* as provided by section 302.535.

A bench trial was held on March 30, 2015. At trial, Highway Patrol Trooper Richardson testified that he maintained the breath analyzer used to administer Harrell's BAC test ("Datamaster") in April, 2014. He performed maintenance on the Datamaster in April using a wet bath simulator machine ("Simulator"). The Simulator was returned

---

[1] We view the evidence in the light most favorable to the trial court's judgment. *Ridge v. Dir. of Revenue*, 428 S.W.3d 735, 736 (Mo. App. W.D. 2014). The underlying facts regarding the arrest are undisputed.
[2] All statutory citations are to RSMo 2000 as currently updated, unless otherwise noted.

to Jefferson City in August of 2014. From that time forward, a dry gas simulator was used to perform maintenance checks on the breathalyzer machines in Clay County ("County").

The Director offered into evidence State's "Exhibit 2," which contained a maintenance report showing that the Datamaster had undergone a maintenance check on April 1, 2014.[3] The exhibit also contained a Calibration Certification Form from the Missouri Highway Patrol showing that the Simulator had been certified against a NIST traceable reference thermometer on October 3, 2013.

Harrell made a number of challenges to the admission of the BAC report, including that there was insufficient foundation. Harrell argued that, because the trial was being held in 2015, the Director was required to show that the simulator used to test the Datamaster had been certified against a NIST thermometer in 2014. In other words, Missouri regulations require up-to-date certification records for a simulator at the time of trial, regardless of when the simulator was used to calibrate a breath analyzer or when the applicable test was taken. The trial court received evidence, over Harrell's objection.

Following the hearing, Harrell submitted a written brief challenging the admission of the BAC results because proper foundation was not established under 19 CSR 25-30.51(4). The trial court agreed, issuing Findings of Fact and Conclusions of Law and Judgment that there was insufficient foundation for admission of the BAC test results.

---

[3] We note that, although Trooper Richardson testified at trial that he maintained the Datamaster used to conduct Harrell's BAC test, State's "Exhibit 2" contains a Datamaster maintenance report prepared by Trooper Ryan J. Wilhoit as well as a permit to conduct maintenance for Trooper Wilhoit. There is no maintenance report prepared by Trooper Richardson, nor credentials supporting Trooper Richardson's certification to maintain or calibrate a breath analyzer.

The trial court found that the lack of a 2014 test of the Simulator against a NIST traceable reference thermometer and the fact the maintenance tickets of the calibration tests of the Datamaster were illegible made the test results inadmissible, reversing the courts prior ruling during trial allowing the admission of this evidence. Because of this finding, the court set aside the revocation of Harrell's driving privileges. This appeal followed.

## Standard of Review

> "[Appellate courts] review the trial court's judgment in a ... license suspension or revocation case like any other court-tried civil case." *Johnson v. Dir. of Revenue, State*, 411 S.W.3d 878, 881 (Mo.App.2013). "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010).

*Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016). "Statutory interpretation is an issue of law that this Court reviews *de novo*." *Id.* We interpret regulations just as we would statutes. *Id.*

## Discussion

## I.

The Director's first point on appeal alleges that the trial court erred in excluding evidence of Harrell's BAC because the Director failed to lay proper foundation for its admission.

To suspend or revoke a driver's driving privileges, the Director must "present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent." *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 447 (Mo. App. E.D. 2013).

It is the Director's burden to prove by a preponderance of the evidence that probable cause existed to arrest a driver for driving while intoxicated and that an evidentiary breath test determined the driver's BAC was beyond the legal limit. *Raisher v. Dir. of Revenue*, 276 S.W.3d 362, 364 (Mo. App. W.D. 2009). To introduce evidence of the driver's BAC, the Director must lay a separate foundation showing that the police conformed to the requirements of the Code of State Regulations ("CSR"). *Hill v. Dir. of Revenue*, 985 S.W.2d 824, 827 (Mo. App. W.D. 1998). In laying the foundation, the Director must show the breath analyzer test was performed: (1) by following the approved techniques and methods of DHSS, (2) by an operator holding a valid permit, and (3) using equipment and devices approved by DHSS. *Id.* The provisions that must be followed to satisfy the foundational requirements are set forth in 19 CSR 25-30. *Id.*

> At issue in this case are the requirements of 19 CSR 25-30.051(4):
>
> Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter.

At trial, the Director's evidence showed that the Datamaster, used to test Harrell's BAC, was maintained on April 1, 2014, in accordance with applicable regulations. The Simulator, used to maintain the Datamaster, was certified against a NIST thermometer on October 3, 2013. The applicable April 1st maintenance was performed within one year of the Simulator's certification. The Director presented no evidence showing that the Simulator was recertified at any time in 2014, and Harrell objected to the BAC test's

5

admission on this basis. In response, the Director argued that such evidence was unnecessary because the Simulator was properly certified as of the date of Harrell's BAC test.

Although initially overruling Harrell's objection at trial, the trial court ultimately found that the BAC report was inadmissible because:

> There was an insufficient foundation for admission of the test results, due to: no evidence of 2014 certification against NIST traceable reference thermometer or thermocouple. No evidence that unit was no longer in service but only that it was returned to Jefferson City, Missouri. Evidence Tickets attached to Datamaster Maintenance Reports are ineligible [sic].

The Director appeals this decision, alleging that the trial court misinterpreted the requirements of 19 CSR 25-30.051(4). The Director contends that, for proper foundation to be laid for BAC test results, the Director must only show that the machines used were in compliance with the regulations at the time of the applicable BAC test. For support, the Director looks to *Sellenriek v. Director of Revenue*, 826 S.W.2d 338 (Mo. banc 1992). In *Sellenriek*, the Missouri Supreme Court considered challenges, in multiple combined appeals, to the admissibility of BAC results because the Director failed to properly show maintenance of the breath analyzer machines every thirty-five days. *Id.* at 340. The Court found that the applicable 1988 amendment to the regulations required maintenance checks of machines every thirty-five days. *Id.* But, if a maintenance check was not performed during any thirty-five day period, the machine was not rendered permanently unusable. *Id.* Instead, the definition of "maintenance check" demonstrated that the intent of the regulation was to ensure "the proper functioning and operation of the machine when a blood alcohol analysis is conducted." *Id.*

6

> If the proponent of the test offers proof that a maintenance check has been performed on the machine within 35 days *prior to the test in question*, then the proponent has demonstrated compliance with the maintenance check aspect of the regulation since evidence has been produced that the test was performed according to approved techniques and methods on a reliable machine.

*Id.* (emphasis added); *see also, McClimans v. Dir. of Revenue*, 826 S.W.2d 422, 423 (Mo. App. E.D. 1992) (same).

*Kern v. Director of Revenue* addressed a similar situation in which the Director presented evidence of regulatory compliance prior to the applicable BAC test but presented no evidence of subsequent maintenance. 936 S.W.2d 860, 862 (Mo. App. E.D. 1997). The Eastern District applied *Sellenriek* and held that "[m]aintenance checks that occur subsequent to the blood alcohol test go to the weight of the evidence, not submissibility." *Id.* In *Kern*, the breath analyzer used was removed from service after Kern's BAC test and there was no evidence that any subsequent maintenance had been performed. *Id.* Although the machine was removed from service, there was no evidence presented that the machine had performed unreliably or that there was a malfunction. *Id.*; *see also*, *State v. Reichert*, 854 S.W.2d 584, 593 (Mo. App. S.D. 1993) (subsequent maintenance checks may be relevant to suggest a machine malfunction but are not a foundational requirement).

"The director's burden of proof has two components--the burden of production and the burden of persuasion." *White v. Dir. of Revenue*, 321 S.W.3d 298, 304 (Mo. banc 2010). The burden of production requires the director to introduce enough evidence to have the issue decided by the fact-finder--in this case compliance with the regulations.

7

*Id.* at 304-05. The burden of persuasion is a party's duty to convince the fact-finder to view the facts favorably to that party. *Id.* at 305. As long the Director shows conformity with the regulations, BAC results are admissible. *Messner v. Dir. of Revenue*, 469 S.W.3d 476, 482 (Mo. App. W.D. 2015). But, a showing that the BAC results are admissible is not proof that they are credible or reliable.[4] *Id.*

Missouri mandates a strict adherence to DHSS regulations. "[W]here the Department of Health has enacted regulations concerning the proper methods of conducting blood alcohol tests . . . the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence." *State v. Mattix*, No. ED102236, 2016 WL 880786, *3 (Mo. App. E.D. March 8, 2016); *State v. Ross*, 344 S.W.3d 790, 792 (Mo. App. W.D. 2011). Harrell contends that literal compliance requires that this Court find that proof of certification must be offered for every year a simulator is in service regardless of when it was used to maintain the applicable breath analyzer or when a BAC test was administered.

For support, Harrell primarily relies on *Carter v. Director of Revenue*, 454 S.W.3d 444, 448 (Mo. App. W.D. 2015). In *Carter*, this Court considered what proof of certification was required by 19 CSR 25-30.51(4). *Id.* The Director had provided evidence of NIST certification in 2014--the certification immediately preceding the applicable BAC test. *Id.* The Director had not, however, provided evidence of NIST certification in 2013. *Id.* The Court held that because the Director had not provided

_____
[4] Prior cases use the "credibility" and "reliability" interchangeably. "Credibility" refers to witness testimony. "Reliability" properly refers to the results of scientific or other testing.

8

evidence of both the 2014 *and* 2013 certifications, it failed to establish compliance with the DHHS regulations and proper foundation for the admission of the BAC results. *Id*. at 448-449; *see also, State v. Pickering*, 473 S.W.3d 698, 703 (Mo. App. W.D. 2015) (same).

We do not believe that the requirements of *Carter* require the Director to present evidence of post-testing maintenance and certification of machines as *foundation* for the admission of BAC results. The reasoning of *Sellenriek* and *Kern*, that what matters is the compliance with the testing of the machine at the time the breath test in question was administered, is still good law. While the language of 19 CSR 25-30.51(4) does require annual certification of the Simulator, the foundational requirements for the admissibility of a BAC test result must have been met at the time of the test in question was administered.

While the accuracy of Harrell's BAC test could be challenged, based on the discontinued use of the Simulator and lack of subsequent certification, such a challenge raises a question of reliability not admissibility, and thus, a factual determination that must be made by the trial court.

We remand this case for the trial court to admit evidence of Harrell's BAC result and make any factual determinations necessary as to its reliability.

**II.**

The Director's second point on appeal alleges that the court erred in finding the Director had not met its burden of proving that Harrell's BAC was above the legal limit because the evidence tickets from the certification tests were illegible.

In addition to finding lack of foundation for the BAC test results because the Simulator was not certified in 2014, the court found that there was no foundation because "Evidence Tickets attached to Datamaster Maintenance Reports are ineligible [sic]." Parties agree that "ineligible" was intended to be "illegible."

The copies of the printouts attached to the Datamaster Maintenance Report are dark enough to read the title "BAC DataMaster Evidence Ticket" and the signature of the person performing maintenance, Trooper R.J. Wilhoit. The information actually printed by the Datamaster during the maintenance check is all illegible.

As noted above, to lay a proper foundation for the introduction of a BAC test result, the Director must show that the breath analyzer test was performed (1) by following the approved techniques and methods of DHSS, (2) by an operator holding a valid permit, and (3) using equipment and devices approved by DHSS. *Hill,* 985 S.W.2d at 827.The provisions that must be followed to satisfy the foundational requirements are set forth in 19 CSR 25-30. *Id.* Under, 19 CSR 25-30.031, maintenance checks must be performed on breath analyzers at least every thirty-five days. As part of that check, the operator is to perform three diagnostic tests, listing the results of each test on the report and attaching the printouts. The report on the Datamaster lists the result of all three tests and attaches the signed printouts. To the extent there is a deficiency, it is only that the results printed by the machine cannot be read. But, the test results from those printouts are typed in the report.

Nothing in the regulations speaks to the state of the attached diagnostic tests printouts. What is important is that the maintenance check was done and the test results

10

were within the accepted standards. The Datamaster Maintenance Report, to which the printouts were attached, clearly shows the results of the tests performed and each test was within accepted parameters. This issue is well decided. "If there is other evidence that the machine has been properly tested and maintained, then the report is admissible without the printouts." *Sheridan v. Dir. of Revenue*, 103 S.W.3d 878, 881 (Mo. App. E.D. 2003). In *Sheridan*, the printouts were not attached to the maintenance report and the court found that the report was still admissible because it was (1) signed by the inspecting officer, (2) showed that the required checks and tests were performed, and (3) contained the test results. *Id.* The Datamaster Maintenance Report in this case had the same three indicators of reliability. A claim that the blood test results are invalid will only succeed if there is some evidence that a malfunction occurred.[5] To the extent the trial court found there was insufficient foundation for the BAC test results because the diagnostic printouts attached to the Datamaster maintenance report were not legible, it erred.

The Director also challenges the trial court's findings based on the failure of Harrell to object to the legibility of the maintenance report. Given our holding above, we need not address this argument.

## Conclusion

---

[5] We further note that, at trial, Harrell chose not to cross-examine Trooper Richardson, forgoing her opportunity to question him about the illegible nature of the maintenance reports or address any concerns she might have had with the maintenance tests themselves or to show that the illegible tests were due to a malfunction in the results rather than a mere printer error.

We remand this case with instructions for the trial court to admit evidence of Harrell's BAC results and then to determine if the results are reliable and the Director has met its burden of persuasion based upon the evidence adduced at trial.[6]

_____
Gary D. Witt, Judge

All concur

---

[6] Because the trial court admitted the evidence during the trial but after the close of evidence and prior to its judgment reversed itself and ruled the evidence was inadmissible, a new trial or reopening the evidence is not warranted.