

# Missouri Court of Appeals

## Southern District

## Division One

| | | |
|---|---|---|
| MICHAEL RAY SLEDD, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD34272 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | **Filed: Nov. 29, 2016** |
| | ) | |
| Respondent-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

Honorable Jerry J. Rellihan

**REVERSED AND REMANDED WITH INSTRUCTIONS**

The Director of Revenue ("Director") appeals the judgment setting aside her suspension of Michael Ray Sledd's ("Driver") driving privileges after Driver was arrested in August 2014 for driving while intoxicated with a blood-alcohol concentration ("BAC") in excess of .08%. *See* sections 302.505 and 302.535.[1] The trial court set aside the suspension on the ground that Director failed to demonstrate that the test of Driver's breath was performed on a breath analyzer machine that met the required standards.

---

[1] All statutory references are to RSMo Cum. Supp. 2013.

1

Director claims the ruling was erroneous because the simulator solution used to calibrate the breath analyzer ("the Simulator") had been certified as required "at the time of maintenance, and [19 CSR 25-30.051(4)] did not require [Director] to show that an additional certification occurred after the date the maintenance check was performed."  Finding merit in this claim, we reverse the judgment of the circuit court and remand the matter for further proceedings consistent with this opinion.

**Applicable Principles of Review and Governing Law**

"In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law."  *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010).  "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the judgment and all contrary evidence and inferences are disregarded." *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 446 (Mo. App. E.D. 2013).  In contrast to that deference in fact-finding, we review the trial court's interpretation of statutes and regulations *de novo*.  *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016).

To suspend a license, Director must establish "that at the time of a driver's arrest:  (1) there was probable cause for arresting the driver for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of 0.08 percent."  *McGough v. Dir. of Revenue*, 462 S.W.3d 459, 462 (Mo. App. E.D. 2015); *see also* section 302.505.1.  Proof that the BAC exceeded the legal limit may be in the form of the results of a breathalyzer test if the proper foundation for the result is established.  *See Irwin v. Dir. of Revenue*, 365 S.W.3d 266, 268-69 (Mo. App. E.D. 2012).  "Foundational requirements for the admission of breath tests are only an

issue in the event that [as occurred here] a timely objection is made." ***Courtney v. Dir. of***

***Revenue***, 477 S.W.3d 659, 667 (Mo. App. W.D. 2015).

> To establish a *prima facie* foundation for admission of breathalyzer test results, Director must demonstrate the test was performed:  (1) by following the approved techniques and methods of DHSS [Department of Health and Senior Services]; (2) by an operator holding a valid permit; (3) on equipment and devices approved by DHSS.

***O'Rourke***, 409 S.W.3d at 447.

The "rule defin[ing] the standard simulator solutions . . . to be used in verifying and

calibrating breath analyzers, as well as the annual checks required on simulators used in

conjunction with the standard simulator solution[,]" is:

> Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in . . . this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter.

19 C.S.R. 25-30.051(4).

**Evidentiary and Procedural Background**

At the outset of the September 28, 2015 bench trial, Director's counsel requested findings

of fact as to witness credibility and whether sufficient evidence supported that "[Driver] was

driving with a blood alcohol content of eight hundredths of one percent or more by weight."

Counsel for Director also provided the trial court with a proposed form to use in making its

findings.

Highway Patrol Trooper William M. Bush provided the following testimony.  On August

13, 2014 he stopped Driver's vehicle for speeding, and he noticed that Driver's speech was

"slightly slurred[,]" "his eyes were bloodshot and watery looking[,]" and Driver had "a moderate

smell of alcohol about his person."  The trooper arrested Driver for driving while intoxicated

3

after his performance on a gaze nystagmus test indicated that he "was intoxicated." After Driver was transported to jail, Driver took a breath test on a particular "DataMaster" breath analyzer machine identified by a serial number ("the breath machine").[2]

When counsel for Director asked the trooper to testify about Driver's "breath test result[,]" counsel for Driver objected that Director had not "laid a sufficient foundation under 19 CSR 25-30.051 as it relates to the testing of the thermostat[3] on the simulator" ("the foundation objection"). The trooper was permitted to testify about the result of the test, subject to an eventual ruling by the trial court on the foundation objection. Trooper Bush's written report was received into evidence, but its reflection of an "alleged blood alcohol readout from the [breath machine]" was also subject to a ruling on the foundation objection.

Maintenance reports on the breath machine resulting from inspections performed on August 12, 2014—the day before Driver's arrest—and September 13, 2014 ("the 2014 maintenance inspections") were received into evidence with "[n]o objection." The 2014 maintenance inspections reflected the same serial number and "EXP. DATE" of December 20, 2014 for the Simulator. Additional records received into evidence indicated that the Simulator was itself tested using a NIST traceable thermometer during a December 20, 2013 simulator certification. That particular certification reflected an "[e]xpir[ation]" date for the Simulator of December 20, 2014.

Highway Patrol Trooper Joshua White provided the following testimony. He began doing maintenance checks on breath analyzers in St. Clair County in December 2014 after another trooper had resigned from the position. When Trooper White moved into the St. Clair

---

[2] Following an administrative hearing, Director suspended Driver's license based upon findings concerning this incident.

[3] We have been unable to find any reference to "thermostat" in either the regulation cited by Driver or in the record on appeal other than its use by Driver's counsel.

position, he brought his own simulator with him, and he sent the Simulator to the Patrol's facility in Jefferson City. Trooper White did not know when the Simulator was last used in a maintenance check or whether it had been certified after the last time it was used in a maintenance check.

After Trooper White's testimony, counsel for Director reoffered Driver's breath-test result. Driver's counsel made "the same objection[,]" adding that "[p]ursuant to 19 CSR 25-30.051, the thermostat on the [S]imulator has to be checked on an annual basis. Specifically, that section says that [the "thermostat" on a simulator] has to be checked up against a NIST traceable thermometer between January 1, 2013, and December 31, 2013, and annually thereafter." Driver's counsel pointed out that while the 2014 maintenance inspections evidenced that the "thermostat" for the Simulator had been checked in 2013, "there is no evidence that it was ever checked in 2014." Director's counsel argued that the December 2013 certification was sufficient to cover the Simulator "up to December 20[,]" 2014.

The trial court took the objection under advisement and permitted the parties an opportunity to brief whether the December 2013 certification was good "from January 1, 2014, up and until . . . the date of [Driver's] arrest[.]" The form judgment subsequently entered allowed the trial court to select particular preprinted findings and, in some instances, to supplement those findings with written entries on blank lines. Room for such additional findings was available under the categories of "Credibility[,]" "Probable Cause[,]" and "BAC[.]" No findings as to credibility or probable cause were either checked or written. Under "BAC," the trial court checked the pre-printed finding that "[t]here was an insufficient foundation for

5

admission of the test results" and provided additional findings via handwritten text.[4]

## Analysis

Director maintains that the trial "court erred as a matter of law in reinstating [Driver]'s driving privilege on the ground that the test result was inadmissible" because "the 2013 simulator certification was in effect and had not expired at the time of the maintenance check" on the breath machine. Director argues that "the only relevant simulator certification for purposes of admissibility is the certification in effect at the time of the maintenance check" and that to construe 19 C.S.R. 25-30.051(4) otherwise would be "absurd" because it would mean that, without regard to when a trial was held, a simulator would need to be certified within each and

---

[4] The following is an image of that handwritten text.

Director maintains that the handwritten text states:

> DOR failed to meet its burden that it followed the approved techniques & methods of DHSS – "Any Breath Alcohol Simulator used in the verification or calibration of evidential breath analyzers with standard simulator solutions referred to in sections (2) & (3) of this rule shall be certified against a NIST traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter," 19 C.S.R. 25-30.051(4).

Driver does not mention the handwritten entry, and there is no text following the heading "Statement of Facts" in Driver's brief. The brief simply argues that the judgment should be upheld because "there was a lack of compliance with 19 CSR 25-30.051(4)." We do not decide whether Director's suggested quotation is a correct recitation of the handwritten text. The handwriting does refer to 19 C.S.R. 25-30.051(4)'s requirement that the simulator be certified between January 1, 2013 and December 31, 2013 and annually thereafter. Given Driver's objection to the admission of the breath test result based upon a claim that the Simulator had not been certified in 2014, the trial court's request for briefing on the issue of whether the December 2013 certification was good "from January 1, 2014, up and until . . . the date of [Driver's] arrest[,]" and the fact that the trial court made no other findings as requested by Director under Rule 73.01(c), it is clear that the basis for the judgment was the trial court's finding that the Simulator's December 2013 certification was insufficient to support the admission of the breath test result. Missouri Court Rules (2016).

6

every calendar year between the maintenance check preceding a driver's breath test and the date of trial. We agree.

"The primary rule of construction is to ascertain the agency's intent from the language used and give effect to that intent, while considering the words used in their plain and ordinary meaning." *Rundell v. Dir. of Revenue*, 487 S.W.3d 496, 500 (Mo. App. E.D. 2016). Title 19 C.S.R. 25-30.051 does not define the term "annually," and no definition of the term is included in other administrative regulations relating to the determination of blood alcohol content. *See* 19 C.S.R. 25-30.011. "In the absence of a definition in the regulation, the words will be given their plain and ordinary meaning as derived from a dictionary." *Rundell*, 487 S.W.3d at 500.

Director compares the instant case to *Sellenriek v. Dir. of Revenue*, 826 S.W.2d 338, 340-41 (Mo. banc 1992) (construing a former regulation set out at 19 C.S.R. 20-30.031), in which our high court stated that "the purpose of the maintenance check requirement is to ensure the reliability of a particular test result" and the critical maintenance check was the one "done within 35 days *prior* to the test sought to be admitted." Director also points out the Eastern District's holding in *Kern v. Dir. of Revenue*, 936 S.W.2d 860, 862 (Mo. App. E.D. 1997), that evidence of a maintenance check performed after a certain breath test was taken may go to the weight the fact-finder may give the test result, but evidence of a later maintenance check is not a required part of the foundation necessary to support the admission of the breath test. The reasoning of these cases also supported two more recent decisions addressing simulator certifications. *See Blackwell v. Dir. of Revenue*, 489 S.W.3d 879, 883-84 (Mo. App. W.D. 2016), and *Harrell v. Dir. of Revenue*, 488 S.W.3d 202, 207 (Mo. App. W.D. 2016).

In *Harrell*, a simulator was certified in October 2013, a maintenance check of the breath analyzer was done on April 1, 2014, and that breath analyzer was used to administer a breath test

7

on April 6, 2014.  488 S.W.3d at 204-05.  After noting that literal compliance with the regulation was necessary, *id.* at 207, the Western District rejected the notion "that literal compliance requires that this Court find that proof of certification must be offered for every year a simulator is in service regardless of when it was used to maintain the applicable breath analyzer or when a BAC test was administered."  *Id*. at 207-08.  The case was then remanded for further factual determinations relating to the accuracy of the BAC test -- not its admissibility -- based on evidence of "the discontinued use of the [s]imulator and lack of subsequent certification[.]"  *Id.* at 208.[5]

The requirement of simulator certifications was addressed again in ***Blackwell*** (also without any express construction of "annually," but with a consideration of what constituted the foundation necessary to demonstrate an "up-to-date" simulator).  489 S.W.3d at 882.  The driver in ***Blackwell*** objected to the admission of a June 22, 2014 breath test taken after a June 1, 2014 maintenance check and an October 2013 simulator certification on the ground that there was no evidence that the simulator was subsequently certified in 2014.  *Id.*  The court considered the driver's objection "[i]n other words" to be that "Missouri regulations require up-to-date certification records for a simulator at the time of trial, regardless of when the simulator was used to calibrate a breath analyzer or when the applicable test was taken."  *Id.*

> The reasoning of *Sellenriek* and *Kern*, that what matters is the accuracy of the machine at the time of testing, remains good law.  The language of 19 CSR 25-30.51(4) does not expressly require annual certification beyond the date of a BAC test.  Nor should *Carter* [*v. Dir. of Revenue*, 454 S.W.3d 444, 448 (Mo. App. W.D. 2015) (requiring proof an initial certification within 2013 as the regulation expressly states in connection with a breath test administered in June 2013)] be read so broad as to require post-BAC test certification to establish foundation for the admissibility of a BAC test result.

---

[5] ***Harrell*** did not contain any discussion of the meaning of "annually."

*Id.* at 885. **Blackwell** also resulted in a remand for the admission of the BAC result and a subsequent determination by the trial court of whether the result of that test was reliable. **Id.**

Driver attempts to distinguish **Harrell** and **Blackwell** on the basis that "the exact date that [the Simulator] was taken out of service" is unknown. We fail to discern any relevance in the claimed distinction as 19 C.S.R. 25-30.051(4) does not contain any certification requirement related to the removal of a simulator from service.

Driver also insists that "annually as used in 19 C.S.R. 25-30.051(4) means once per calendar year." The suggested interpretation would allow a simulator to go uncertified for a period of 728 days.[6] Such an outcome would undercut the broader purpose of ensuring the reliability of a breath analyzer at the time the breath test is performed. *See Sellenriek*, 826 S.W.2d at 340. Driver's citation to dictionary definitions of "annual[,]" the general statutory definition of "**year**" contained in section 1.020(11), and a case from the Supreme Court of Wyoming are neither dispositive nor persuasive.

Driver quotes a definition of "annual" from 116 *Black's Law Dictionary* (Revised 4th ed. 1968) that provides multiple meanings. One such meaning is something "occurring within the space of a year[.]" Interpreting 19 C.S.R. 25-30.051(4) to require a certification of a simulator within the space of one year from the date of its previous certification would be in conformity

---

[6] In applying Driver's theory, a simulator that was certified at the first opportunity in a given year, say January 1, 2014, would not require certification until the last opportunity of the next calendar year, January 1, 2015; and a test of a driver's breath on December 31, 2014, on a breath analyzer checked with that simulator, would fall within this period. Driver also contends that "[t]he plain reading of the regulation could easily be construed as requiring [Director] to show that the [S]imulator was functioning properly both before and after the relevant breath test in order to lay the necessary foundation for admission[,]" but he cites no authority for this premise. Nor does he suggest restriction of the premise to the *first* certification of a simulator *following* a breath test, without which the illogical result would follow of requiring certification of a simulator throughout any and all years that a matter involving a simulator is pending in the courts, regardless of whether that simulator is being used at all. We reject such a broad and illogical result contrary to the purpose of the pertinent regulation. *See Sellenriek*, 826 S.W.2d at 340 (regarding the purpose of maintenance checks), and *cf. **Leiser v. City of Wildwood***, 59 S.W.3d 597, 604 (Mo. App. E.D. 2001) ("[w]e will not interpret a statute or ordinance so as to reach an absurd result contrary to its clear purpose").

9

with that definition of "annual."  And while section 1.020(11) defines "**year**" as "a calendar year unless otherwise expressed," this does not advance Driver's argument because 19 C.S.R. 25-30.051(4) does not use the word "year."  Finally, the holding in ***Johnson v. City of Laramie***, 187 P.3d 355, 358 (Wyo. 2008), that "annually" in that state's rules and regulations regarding breath analysis instruments means "once every calendar year" does "not constitute controlling precedent in Missouri courts."  ***Craft v. Philip Morris Cos., Inc.***, 190 S.W.3d 368, 380 (Mo. App. E.D. 2005).  We agree with our colleagues on the Western District that the certification of the Simulator within 365 days of its previous certification satisfied the requirement under Missouri law that a simulator be certified "annually."  19 C.S.R. 25-30.051(4).

Director's point is granted, and the judgment setting aside the suspension of Driver's license is reversed.  We remand the case, and the trial court is directed to admit the breath test and then determine whether it finds the test result reliable.  *Cf. **Blackwell***, 489 S.W.3d at 885.


DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

10