**Gilbert T. KERN, Petitioner/Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent/Appellant.**

No. 70789.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 7, 1997.

Jeremiah W. (Jay) Nixon, Attorney General, Charles L. Gooch, Special Assistant, Attorney General, Missouri Department of Revenue, Jefferson City, for respondent/appellant.

Richard K. Zerr, Steven B. Hillemann, St. Charles, for petitioner/respondent.

REINHARD, Judge.

Director of Revenue (Director) appeals from the circuit court judgment setting aside the suspension of petitioner's driving privilege after a trial *de novo*. We reverse and remand.

Pursuant to the procedures set forth in §§ 302.500–302.540, RSMo 1994,[1] Director suspended petitioner's driving privileges following petitioner's arrest for driving a motor vehicle on September 22, 1995, with a blood alcohol concentration (BAC) of .10% or more. *See* § 302.505. Director sustained this suspension after an administrative appeal. Petitioner petitioned for trial *de novo* with the circuit court, and the court reversed the order of suspension.

On May 9, 1996, the case was called for trial, and according to petitioner's brief, the matter was submitted "to the trial court on the issue of whether there was a sufficient foundation for admission of [petitioner's] breath test since a maintenance check had

---

1. All statutory references are to RSMo 1994.

not been performed on the intoximeter when the device was removed from the police station some time after [petitioner's] September 22, 1995 breath analysis testing."

Director's documents submitted to the court consisted of the following: (1) arresting officer's Alcohol Influence Report and accompanying narrative on petitioner's September 22, 1995, arrest; (2) citations for failure to drive within a single lane and DWI; (3) operational checklist for the Intoximeter 3000; (4) test printout showing petitioner's BAC to be .17% BAC by weight; (5) maintenance report dated September 5, 1995; and (6) affidavit of the records custodian of the Missouri Department of Health with attached business records, consisting of the September 5, 1995, maintenance report of the Intoximeter 3000, serial number 4859, test printouts, and the officer's Type II permit.

Petitioner presented only the affidavit of Bill Whitmar, an employee of the Missouri Department of Health.

After taking the matter under advisement, the trial court entered judgment for petitioner, explaining:

[T]he breathalyzer record submitted by the Director ... lack[s] substantial foundation and credibility due to the fact that the breathalyzer unit used to test the [petitioner] in this case was subsequently withdrawn from service without a maintenance report being done to indicate that the machine was operating properly at the time it was withdrawn from service. The Court finds as significant the Affidavit of Bill Whitmar ... who indicated that the Department of Health did make a verbal recommendation that the Type II Operator perform a maintenance check on this machine prior to its removal from service.... [T]he failure to perform this maintenance check creates a substantial question as to whether or not the machine used in this test was operating properly on the date of the test performed on the [petitioner].

Our review of this case is controlled by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

banc 1976). *Oughton v. Director of Revenue*, 916 S.W.2d 462, 464 (Mo.App. E.D.1996). We must affirm the decision of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

On appeal, Director contends the trial court erred in setting aside the suspension of petitioner's driving privilege because "whether a maintenance check was performed on a breath analysis device *after* [petitioner's] blood alcohol testing is irrelevant where proof of a timely maintenance check performed within thirty five days next preceding the test was shown."

■ Foundational prerequisites for admission of blood alcohol test results are: (1) the test was performed by following the approved techniques and methods of the Department of Health; (2) the operator held a valid permit; and (3) the equipment and devices were approved by the Department. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo. banc 1992) (citing *Stuhr v. Director of Revenue*, 766 S.W.2d 446, 449 (Mo. banc 1989)). Petitioner does not contend that Director failed to meet these foundational requirements.

■ If a proper and timely objection is made to the admission of the blood alcohol analysis, Director must present proof of "a maintenance check performed within 35 days prior to the test." *Sellenriek*, 826 S.W.2d at 341. The Department of Health's regulation requires that maintenance checks be performed at intervals not to exceed 35 days and when: (1) a new instrument is placed into service; (2) the instrument has been put in a new location; or (3) the instrument has been repaired or recalibrated. Mo.CODE REGS. TIT. 19, § 20–30.031(3).

Maintenance checks are defined as "standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by the Department of Health." *Sellenriek*,

826 S.W.2d at 340 (citing Mo.Code Regs. tit. 19, § 20–30.011(2)(F)). The check is designed to ensure the machine is operating properly when a blood alcohol analysis is performed. *Sellenriek,* 826 S.W.2d at 340. Consequently, the purpose of the maintenance check requirement is to guarantee reliability of a particular test result. *Id.*

In *State v. Reichert,* 854 S.W.2d 584 (Mo. App. S.D.1993), the Southern District addressed an almost identical issue. In *Reichert,* the court relied on *Sellenriek, supra,* in holding that proof a maintenance check was performed within 35 days before a blood alcohol test is sufficient foundation for admission of the test into evidence. In the case at hand, the state clearly presented such evidence. Thus, the trial court erred in finding there was an insufficient foundation for admission of the test results. Petitioner concedes that the only issue presented to the trial court was the adequacy of the foundation of the test results.

 Maintenance checks that occur subsequent to the blood alcohol test go to the weight of the evidence, not submissibility. *Reichert,* 854 S.W.2d at 593. A claim that blood test results are invalid "will only succeed if there is some evidence that a malfunction occurred. . . ." *Stuhr v. Director of Revenue,* 766 S.W.2d 446, 449 (Mo. banc 1989). *See also Reichert,* 854 S.W.2d at 593. Here, a subsequent maintenance check was not performed, and the machine was later taken out of use. Petitioner did not present any evidence to the trial court that the intoximeter had performed unreliably or that there was a malfunction.

Director's evidence provided sufficient foundation for the admission of petitioner's blood alcohol test result. The trial court erred in ruling otherwise. There was no evidence that a malfunction occurred. Therefore, there was not substantial evidence to support the trial court's finding that failure to perform a subsequent maintenance check lessens the credibility of petitioner's blood alcohol test result. The judgment of the trial court is reversed, and the cause is remanded for the trial court to enter a judgment reinstating petitioner's suspension.

Judgment reversed and remanded.

DOWD, P.J., and GARY M. GAERTNER, J., concur.