Randal CAREY, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. ED 104278

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: March 28, 2017

Rachel M. Jones, Missouri Dept. of Revenue, P. O. Box 475, 301 W. High Street, Jefferson City, MO 65105, for Appellant.

Zachary W. Rennick, 209 W. Third Street, Washington, MO 63090, for Respondent.

ROBERT G. DOWD, JR., Judge

The Director of Revenue appeals from the judgment reinstating the driving privileges of Randal Carey, which were suspended after his arrest for driving while intoxicated. The Director argues that the trial court erred in excluding from evidence the breath test results showing Carey's blood alcohol content ("BAC") was over the legal limit. We reverse and remand.

On June 6, 2015, Carey was arrested for driving while intoxicated after a traffic stop, during which he performed poorly on field sobriety tests, displayed some indicia of intoxication and told the arresting officer he had been drinking. He agreed to provide a breath sample for testing on an Alco-Sensor IV breath analyzer, the result of which showed his BAC was .142 percent, well over the legal limit of .08 percent. Carey's license was suspended, and he filed a petition for a trial de novo.

The Director's evidence at the trial consisted of the testimony of the arresting officer and a packet exhibit containing the breath test results, documents related to maintenance of the breath analyzer and supporting documents for the arrest. According to the maintenance report, the breathalyzer was verified and calibrated on May 8, 2015 using a breath alcohol simulator with a standard simulator solution. The maintenance report contained information about the solution and the simulator, including the simulator's temperature, serial number and an expiration date of February 23, 2016. That expiration date corresponds with one of the two simulator calibration reports included in the Director's exhibit, certifying that the breath alcohol simulator was tested using standards traceable to the National Institute of Standards and Technology ("NIST") with a particular thermometer, identified by serial number. One is dated February 23, 2015 and expires on February 23, 2016 ("the 2015 certification"), and the other is dated January 28, 2014 and expired January 28, 2015 ("the 2014 certification"). The maintenance report indicated that the machine was operating within specifications.

Carey objected at the outset of trial to admission of the Director's packet exhibit on the ground that the certifications contained hearsay.[1] The court did not rule on this objection and received the exhibit into evidence subject to a later determination about the admissibility of specific portions thereof. When the arresting officer who administered the breath test was asked to testify to the breath test results, Carey again objected. Carey argued that although the Director submitted the 2014 and 2015 certifications showing the simulator had been tested in those years, there was no proof of certification in 2013. Carey contended the applicable regulations for maintaining the breathalyzer required certifications from 2013 and every year

---

1. Specifically, he claimed there was no firsthand knowledge that the thermometers listed in the certifications were actually traceable to NIST standards as required by the applicable regulations.

thereafter and that must be literally and absolutely followed in order for the Director to satisfy its burden of production and persuasion.[2] The court admitted the exhibit "for purposes of the record" and to avoid having to reopen proceedings should the court later determine it was inadmissible for lacking a 2013 certification. The evidence concluded shortly after this objection, and the court took the matter under advisement.

In its judgment, the court agreed that the applicable regulations for admission of breath analyzer results must be strictly followed and by failing to present evidence that the breath analyzer was properly calibrated in 2013 the Director failed to comply with those regulations. The court sustained Carey's objection to the portion of the exhibit containing the BAC results on this ground. Thus, while the trial court concluded that there was probable cause to arrest Carey for DWI, it held that the Director failed to establish his BAC and set aside the order suspending Carey's license. The Director appeals.

 The Director has the burden to establish by a preponderance of the evidence a prima facie case for suspension of a driver's license by introducing evidence that there was probable cause for arresting the driver for an alcohol-related offense and that the driver's BAC exceeded the legal limit of .08 percent. *Gallagher v. Director of Revenue*, 487 S.W.3d 24, 26 (Mo. App. E.D. 2016). To establish that a driver's BAC was over the legal limit, the Director may introduce evidence of the results of a breath analyzer test. *Id.* To lay a foundation for admission of those results,

the Director must establish that the test was performed using the approved techniques and methods of the Department of Health and Senior Services, by an operator holding a valid permit and on equipment and devices approved by the Department. *Id.*

The Department has promulgated regulations regarding the maintenance of breath analyzers that must be strictly followed in order for the results taken from that machine to be admissible at trial. "Maintenance checks" are defined by the Department as "the standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by the Department." 19 CSR 25-30.011(2)(F). A report of the maintenance check must be recorded on a specified form depending on the type of breathalyzer. 19 CSR 25-30.031(7). Maintenance checks must be performed "at intervals not to exceed thirty-five (35) days." 19 CSR 25-30.031(3). If the Director offers a maintenance report showing that a maintenance check has been performed on the machine within 35 days prior to the driver's breath test, then he has demonstrated compliance with this regulation. *See Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340 (Mo. banc 1992). As noted above, the maintenance report in this case showed a maintenance check was performed on this machine on May 8, 2015, less than 35 days prior to the breath test on June 6, 2015.

The Department also has rules regarding the equipment used to perform these maintenance checks, namely standard sim-

---

**2.** Carey also objected on the ground that there was one unchecked box on the officer's operation checklist showing he administered the breath test properly, which he claimed did not comply with the applicable regulations. The Director responded that the officer had explained this was just a mistake in entering the information on the computer and he had actually performed that step—if he had not, the breath analyzer would not have been able to proceed with the test.

ulator solutions and gas mixtures that can be used in verifying and calibrating machines and simulators used in conjunction with the standard simulator solution. *See* 19 CSR 25-30.051. Specifically, the Department requires "annual checks" of the simulators:

Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standards simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institution of Standards and Technology (NIST) traceable reference thermometer or thermo-couple between January 1, 2013, and December 31, 2013, and annually thereafter.

19 CSR 25-30.051(4). This certification requirement became effective December 31, 2012. Here, the Director showed the simulator had been certified in 2014 and 2015.

Carey contended and the trial court agreed that 19 CSR 25-30.051(4) requires, as a foundational prerequisite to admission of a driver's BAC, proof of certification beginning in 2013 and every year thereafter regardless of the date of the relevant maintenance check or the date the driver's breath was tested. On appeal, the Director contends such an interpretation leads to absurd results and, instead, the only certification that should be required to lay a foundation for the admission of the driver's BAC result is the one in effect—that is, not expired—at the time of the relevant maintenance check—that is, the one done within 35 days before the particular breath test at issue. We agree with the Director.

▮▮▮ Because the trial court's ruling regarding admission of the BAC in this case was based solely on interpretation of a regulation, the issue before us is a question of law that we review de novo. *See Gallagher*, 487 S.W.3d at 27. Administrative regulations are interpreted under the

same principles of construction as statutes. *Id.* Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation. *Id.* But we will not apply the plain meaning if it would lead to an absurd or illogical result. *See generally Akins v. Director of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010).

The regulation plainly requires annual certification, starting in 2013, of any simulator used in the verification and calibration of a breathalyzer. But the literal requirement for annual checks does not translate into an absolute foundational requirement that the Director submit proof of certifications for the year 2013 and every year thereafter in every case no matter when the maintenance check and breath test were performed. Imposing that requirement would be absurd and illogical because, as discussed below, the only maintenance check that matters is the one immediately preceding the breath test. Therefore, the only simulator certification that matters is the one in effect *at the time of that maintenance check*.

The Supreme Court years ago concluded that the only maintenance check that matters—for purposes of establishing the foundational requirement that the breath test was performed on a reliable machine—is the one within 35 days before the breath test. *Sellenriek*, 826 S.W.2d at 340. In reaching that conclusion, the Court noted that the plain language of 19 CSR 25-30.031(3) requires the checks must be performed every 35 days, but that did not mean the Director must present evidence of every one of those checks ever performed on the relevant machine:

Implicit in [19 CSR 25-30.031(3) ] is that an approved machine that has had a maintenance check within 35 days is capable of giving accurate readings. The wording of 19 C.S.R. 20-30.031(3) indi-

cates that a Type II operator must perform maintenance checks every 35 days. Reading that part of the regulation in isolation might suggest that if a maintenance check is not made during any 35 day period, a machine will be rendered permanently unusable, regardless of any subsequent maintenance checks. Beside[s] being irrational, such a narrow reading fails to take into account the definition of "maintenance check" found in the [ ] regulations. That definition makes clear that the check is designed to ensure the proper functioning and operation of the machine when a blood alcohol analysis is conducted. Thus, the purpose of the maintenance check requirement is to ensure the reliability of a particular test result.

826 S.W.2d at 340 (internal citations omitted). A maintenance report showing that a maintenance check was performed within 35 days prior to the driver's breath test is evidence of the foundational requirement that "the test was performed according to approved techniques and methods on a reliable machine." *Id.*

*Sellenriek*'s reasoning that "what matters is the compliance with the testing of the machine at the time the breath test in question was administered, is still good law." *Harrell v. Director of Revenue*, 488 S.W.3d 202, 208 (Mo. App. W.D. 2016). Our courts have used this reasoning to interpret 19 CSR 25-30.051(4) and have concluded that simulator certifications *after* the administration of the breath test are not required to lay a foundation for admission of the test results. In *Harrell*, for instance, the Director submitted an October 2013 certification, which was valid for one year, including at time of the relevant maintenance checks in April of 2014. *Id.* at 206. The driver contended that literal compliance with the regulation required proof of certification for every year the simulator was in service—including the years

after the breath test—regardless of when it was used to maintain the applicable breath analyzer or when the particular BAC test was administered. *Id.* at 207. The appellate court recognized that strict compliance with the Department's regulations is required and the Director must demonstrate "absolute and literal compliance" with these regulations as a prerequisite to introducing the test results into evidence. *Id.* But it ultimately concluded, based on *Sellenriek*, that for purposes of admission of the test results, compliance with this regulation is achieved by proving that the simulator was certified at the time of the relevant maintenance check. *Id.*; *see also Blackwell v. Director of Revenue*, 489 S.W.3d 879, 883 (Mo. App. W.D. 2016) (same holding on almost identical facts).

This reasoning applies equally here. The Director need not prove the existence of certifications *before* the one in effect at the time of the relevant maintenance check in order to comply with 19 CSR 25-30.051(4). Implicit in the certification requirement is that only a certified simulator is capable of accurately verifying and calibrating a machine during a maintenance check. Requiring the simulator to be certified annually suggests that a certification can only provide this assurance of capability for one year's time and that, once the certification has expired, the assurance of capability expires too. That is why there is a requirement that the simulator expiration date be included on the maintenance report. *See* 19 CSR 25-30.031(7)(F) (and corresponding form report no. 7). Certifications that have expired by the time of the relevant maintenance check—like certifications done after a breath test—have no bearing on whether the maintenance check was able to verify the reliability of the machine used to test the driver's breath.

Carey argues that we cannot ignore the reference to 2013 in the regulation, which

he says requires proof of an "unbroken sequence" of certification since 2013 in every case. He cites to, and the trial court relied on, cases that relied on the plain language of 19 CSR 25-30.051(4) to require proof of a 2013 certification. *Carter v. Director of Revenue*, 454 S.W.3d 444 (Mo. App. W.D. 2015); *State v. Pickering* 473 S.W.3d 698 (Mo. App. W.D. 2015).[3] But certification from 2013 was required in *Carter* and *Pickering* because that is the year when the maintenance check and breath test occurred. Because in *Carter* the Director had only submitted proof of certification in 2014 (and in *Pickering* had submitted no certifications), there was not a sufficient foundation for admission of the BAC results. But *Carter* and *Pickering* do not in any way stand for the proposition that *every* case requires proof of 2013 certifications simply because that was the relevant year in those cases. In fact, because the Director in *Carter* could not rely on the 2014 certification to lay a foundation for a 2013 breath test, that case is actually consistent with our conclusion that the relevant certification is the one from the year when the test and maintenance check occurred.

Carey's interpretation of the reference to 2013 in this regulation would mean that a simulator not certified in 2013 is effectively unusable, regardless of subsequent certifications, and also does not—in the literal and absolute sense he proposes— account for simulators not in existence, and therefore incapable of being certified, in 2013. This irrational result cannot be what the Department intended. Rather, the reference to the calendar year 2013 in the regulation was simply to give law enforcement agencies a full twelve months to obtain the first certification under this new regulation. *Carter*, 454 S.W.3d at 448-49 (finding that, for 2013 at least, the simulator need not have been certified prior to a 2013 maintenance check, as long as simulator was certified sometime in 2013). This was the point of the phrase "between January 1, 2012 and December 31, 2013"— not to require 2013 certification as a foundational prerequisite to the admission of all future BAC evidence. Thus, our conclusion that *proof* of that 2013 certification is only required if the relevant maintenance check and breath test were conducted in 2013 does not, as Carey contends, render the reference to 2013 "mere surplusage."

Carey suggests that a simulator's certification history might be relevant or necessary to ensure the accuracy of maintenance checks and that, without "scientific evidence" that such information is *not* relevant, our conclusion is based on "vast assumptions." Our conclusion is not based on any assumptions, but on the precedent found in *Sellenriek, Harrell* and *Blackwell* that only the immediately preceding maintenance check—and therefore only the certification of the simulator in effect at that time—is relevant for purposes of laying a foundation to admit the BAC results.[4] In

---

**3.** The trial court and Carey also cite to *Stiers v. Director of Revenue*, which interpreted a different regulation according to its plain language. 477 S.W.3d 611, 615 (Mo. banc 2016). Although that case includes the principles to follow when construing a regulation, it does not require any particular interpretation of the regulation in this case.

**4.** While the lack of certification for 2013 in this case does not defeat the *admissibility* of the BAC, we make no comment on the proba-

tive value, if any, historical or trend information might have on the *reliability* of the BAC result in this case. *See Harrell*, 488 S.W.3d at 208 ("While the accuracy of [a driver's] BAC test could be challenged, based on the discontinued use of the simulator and lack of subsequent certification, such a challenge raises a question of reliability not admissibility, and thus, a factual determination that must be made by the trial court"). The trial court never reached the issue of reliability because it determined the BAC evidence was not ad-

this case, the Director laid a sufficient foundation for admission of the BAC results taken in 2015 by submitting the 2015 simulator certification.

Point granted.

The judgment is reversed, and the case is remanded with directions to admit the BAC results and for further proceedings consistent with this opinion.

Angela T. Quigless, P.J. and Lisa S. Van Amburg, J., concur.

missible. Therefore, we decline Carey's misplaced invitation to construe the trial court's "silence" on this issue as a factual finding that the BAC result was not reliable and affirm the judgment on this ground. The court can address reliability on remand.