Justin Scott HICKENBOTHAM,
Petitioner/Respondent,

v.

DIRECTOR OF REVENUE,
Respondent/Appellant.

No. ED 104307

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: April 4, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied May
16, 2017

**492**

Chastidy R. Dillon–Amelung, John F. Newsham, Clayton, MO, for Plaintiff/Respondent.

Rachel M. Jones, Jefferson City, MO, for Defendant/Appellant.

SHERRI B. SULLIVAN, P.J.

### Introduction

The Director of Revenue (the Director) appeals from the judgment of the trial court reinstating the driving privileges of Justin Scott Hickenbotham[1] (Driver). We reverse and remand.

### Factual and Procedural Background

On September 18, 2015, Driver was pulled over by Missouri State Highway Patrol Trooper Eric Ganime (Trooper Ganime) for speeding and was subsequently arrested for driving while intoxicated. Trooper Ganime transported Driver to the Madison County Jail where he read Driver Missouri's Implied Consent law. Driver consented to take a breath test. Trooper Ganime used an Intox DMT breathalyzer, serial number 500100, to perform the breath test, which measured Driver's blood alcohol content (BAC) as .237%. Trooper Ganime issued Driver a Department of Revenue notice suspending his driving privileges. Driver requested an evidentiary hearing, at which the Director prevailed. Driver then filed a petition for a trial *de novo* in the circuit court to review the suspension.

The trial *de novo* was conducted on March 17, 2016. At the hearing, the Director offered as evidence Exhibit A consisting of the notice of suspension; Trooper Ganime's Alcohol Influence Report and narrative statement; two Uniform Citations; a Blood Alcohol Test Report from the Intox DMT; the Intox DMT Maintenance Report; a Guth Lab Certification of Analysis for the Simulator Solution; a copy of Trooper Ganime's Type II Permit for the Intox DMT; and Driver's driving record. The Intox DMT Maintenance Report indicated the breathalyzer had been verified and calibrated on September 12, 2015, using a breath alcohol simulator with a standard solution. The Maintenance Report stated it was calibrated with a Guth simulator, number MP2214, which expired on June 1, 2016.

The Director also offered into evidence Exhibit B, which included a Guth Lab calibration report for the breath alcohol simulator number MP2214 dated July 8, 2014, and a Department of Health and Senior Services (DHSS) calibration report for the simulator dated June 1, 2015, and expiring on June 1, 2016. Both the 2014 and 2015 reports show the simulator was certified against a National Institute of Standards and Technology (NIST) traceable thermometer or thermocouple as required by 19 CSR 25–30.051(4). The exhibits were admitted into evidence by agreement of the parties, subject to Driver's objection to the admission of the BAC result contending DHSS regulations required the Director to submit evidence the simulator was properly certified in

1. Driver's Motion to Restyle Case Name is denied.

2013 prior to admission of the breath test result.

At the hearing, Driver argued DHSS regulation 19 CSR 25–30.051(4) requires the Director to prove the breath alcohol simulator was calibrated in 2013 and annually thereafter. Driver asserted the breathalyzer result from 2015 was inadmissible unless the Director presented evidence the simulator used to conduct the periodic maintenance checks had been calibrated in 2013, 2014, and 2015. The Director acknowledged the regulation requires testing to begin in 2013 but asserted the simulator at issue was not in service in 2013 and, therefore, it could not be have been tested in 2013. The Director asserted it had submitted a calibration certificate covering the time period relevant to the case and that evidence of calibration occurring two years prior was irrelevant. The case was submitted on the record.

On March 18, 2016, the trial court entered its judgment finding the Director had failed to prove the breath alcohol simulator was not placed into service until 2014 and, thus, the BAC result was inadmissible because the Director failed to submit the required certification for calendar year 2013. The trial court ordered the Director to remove Driver's administrative suspension and to reinstate his driving privileges. Director appeals.

## Point Relied On

■ On appeal, the Director argues the trial court erred in reinstating Driver's driving privileges because the court erroneously declared and applied the law, in that the Director is only required to prove the breath alcohol simulator used in the maintenance check of the evidential breath analyzer had been calibrated according to the requirements of 19 CSR 20–30.051(4)

at the time of the maintenance check, and the regulation does not require the Director to show proof of simulator certifications from previous years that expired prior to the date of maintenance.

## Standard of Review

■ On appeal from the trial court's judgment, this Court will affirm the decision of the trial court if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Irwin v. Dir. of Revenue, 365 S.W.3d 266, 268 (Mo. App. E.D. 2012). In this case, the trial court's exclusion of the evidence was based on interpretation of regulation 19 CSR 20–30.051(4); thus, the issue on appeal is a question of law which we review de novo. Gallagher v. Dir. of Revenue, 487 S.W.3d 24, 27 (Mo. App. E.D. 2016). "Administrative regulations are interpreted under the same principles of construction as statutes." Id. "Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation." Id.

## Discussion

To establish a *prima facie* case for suspension of a driver's license, the Director must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent. Section 302.505.1 [2]; Irwin, 365 S.W.3d at 268. The Director has the burden of establishing grounds for the revocation by a preponderance of the evidence. Section 302.535.1 [3]; Irwin, 365 S.W.3d at 268.

2. RSMo. Supp. 2001.

3. RSMo. Supp. 2002.

The Director may introduce evidence of a breathalyzer test to establish the driver's BAC exceeded the legal limit. Irwin, 365 S.W.3d at 268–69. To lay a foundation for admission of breathalyzer test results, the Director must demonstrate the test was performed: (1) by following the approved techniques and methods of DHSS, (2) by an operator holding a valid permit, (3) on equipment and devices approved by DHSS. Id. at 269. The regulations that must be followed to satisfy the foundational requirements are set forth in 19 C.S.R. 25–30. Hill v. Dir. of Revenue State of Mo., 985 S.W.2d 824, 827 (Mo. App. W.D. 1998).

DHSS regulations regarding breath testing contain a list of approved breath analyzers and require the machines to undergo maintenance checks "at intervals not to exceed 35 days." 19 CSR 25–30.050, 30.031(3). "Maintenance checks" are defined as "the standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by [DHSS.]" 19 CSR 25–30.011(2)(F). "[T]he purpose of the maintenance check requirement is to ensure the reliability of a particular test result." Sellenriek v. Director of Revenue, 826 S.W.2d 338, 340 (Mo. banc 1992). To demonstrate compliance with the regulation, the Director must offer a maintenance report showing that a maintenance check has been performed on the breathalyzer within 35 days prior to the driver's breath test. Id. In this case, the maintenance report admitted into evidence showed a maintenance check had been performed on the breathalyzer on September 12, 2015, six days before Driver's breath test on September 18, 2015.

Effective December 31, 2012, DHSS updated the regulations to add new approved breath analyzers and added a new requirement with regard to breath alcohol simulators used in the verification and calibration of breath analyzers utilizing standard simulator solutions. 19 CSR 25–30.050, 30.051.

19 CSR 25–30.051(4) states:

Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter.

Here, the Director provided evidence the breath alcohol simulator used during the September 12, 2015 maintenance check had been properly certified in 2014 and 2015. Driver contends, however, the plain meaning of the regulation requires the Director to prove the breath alcohol simulator was certified in 2013 and every year after regardless of the date of the breath test or the relevant maintenance check. On appeal, the Director argues 19 CSR 25–30.051(4) simply requires annual certification to begin in 2013 and it must only submit the certification in effect at the time of the relevant maintenance check in order to lay a proper foundation for admission of the breath test result. We agree with the Director.

In Sellenriek, 826 S.W.2d at 340, the Missouri Supreme Court held the Director satisfied DHSS regulatory foundational requirements for submission of a breath test result when it offered proof that a maintenance check had been performed on the breathalyzer within 35 days prior to the test in question. See 19 CSR 25–30.031(3). The Court concluded:

Implicit in [19 CSR 25–30.031(3) ] is that an approved machine that has had a maintenance check within 35 days is ca-

pable of giving accurate readings. The wording of 19 C.S.R. 20–30.031(3) indicates that a Type II operator must perform maintenance checks every 35 days. Reading that part of the regulation in isolation might suggest that if a maintenance check is not made during any 35[–]day period, a machine will be rendered permanently unusable, regardless of any subsequent maintenance checks. Beside[s] being irrational, such a narrow reading fails to take into account the definition of "maintenance check" found in the [ ] regulations. That definition makes clear that the check is designed to ensure the proper functioning and operation of the machine when a blood alcohol analysis is conducted. Thus, the purpose of the maintenance check requirement is to ensure the reliability of a particular test result.

Sellenriek, 826 S.W.2d at 340.

The court concluded "the accuracy of the machine is not dependent on the performance of a maintenance check every 35 days from the date the machine is put in service." Id. at 341. Instead, evidence that a maintenance check was performed within 35 days prior to the breath test demonstrates "the test was performed according to approved techniques and methods on a reliable machine." Id.

In Kern v. Dir. of Revenue, State of Mo., 936 S.W.2d 860, 862 (Mo. App. E.D. 1997), this Court extended Sellenriek's reasoning to situations where the Director provided proof that a maintenance check had been performed on a breathalyzer within 35 days of the breath test but no maintenance check had been performed any time thereafter because the machine had been removed from service. The Court found the evidence of the maintenance check performed prior to the breath test was admissible and that maintenance checks performed after the breath test go

only to the weight of the evidence, not its admissibility. Id.

In Harrell v. Director of Rev., 488 S.W.3d 202, 208 (Mo. App. W.D. 2016), the Western District applied the reasoning of Sellenriek and Kern to the simulator certification requirement under 19 CSR 25–30.051(4). In that case, the Director presented an October 2013 certification, valid for one year, for the breath analyzer simulator used to perform the April 2014 maintenance check conducted within 35 days of the driver's breath test. Harrell, 488 S.W.3d at 204–205. The breath analyzer was subsequently removed from service and the Director did not present evidence of certification for the machine in 2014. Id. at 204. While recognizing the Director must demonstrate "absolute and literal compliance" with DHSS regulations as a prerequisite to introducing the test results into evidence, the court rejected the driver's contention that compliance required evidence of post-testing maintenance and certification. Id. at 207. The court held that while annual certification of the simulator is required by 19 CSR 25–30.051(4), foundation for the admission of the BAC test result is satisfied with proof the simulator was certified at the time of the relevant maintenance check. Id. at 208; see also Blackwell v. Director of Revenue, 489 S.W.3d 879, 885 (Mo. App. W.D. 2016).

Sellenriek's and Kern's reasoning that the only relevant evidence is that which demonstrates compliance when the breath test was administered is still good law and applies in this case. See Harrell, 488 S.W.3d at 208. As with the maintenance check provision, implicit in 19 CSR 25–30.051(4) is that a breath analyzer simulator certified at the time of the relevant maintenance check is capable of accurately calibrating the breath analyzer. Carey v. Dir. of Rev., 514 S.W.3d 679, 2017 WL 1151069 (Mo. App. E.D. March 28, 2017);

see Sellenriek, 826 S.W.2d at 340. Nothing in the regulations suggests the accuracy of the simulator at the time of the maintenance check is dependent on the certification of the simulator in prior or subsequent years. See Sellenriek, 826 S.W.2d at 340; Harrell, 488 S.W.3d at 208. "The Director need not prove the existence of certifications before the one in effect at the time of the relevant maintenance check in order to comply with 19 CSR 25–30.051(4)." Carey, 514 S.W.3d 679, 2017 WL 1151069. Instead, a foundation for the admission of the breath test result is laid when the Director presents evidence the simulator was certified at the time of the relevant maintenance check. Harrell, 488 S.W.3d at 208. Evidence of whether the simulator was properly certified in prior or subsequent years goes to the weight of the breath test result, not its admissibility. See Kern, 936 S.W.2d at 862.

Furthermore, Driver's interpretation of 19 CSR 25–30.051(4) would mean a simulator not certified in 2013 or any subsequent year is effectively unusable and fails to account for simulators brought into use any time after 2013, an illogical reading leading to irrational results. Carey, 514 S.W.3d 679, 2017 WL 1151069.

Here, the Director laid a sufficient foundation for admission of the result of the breath test administered in 2015 by submitting the 2015 simulator certification. The Director's point on appeal is granted. Because the court did not make a finding as to whether Trooper Ganime had probable cause to arrest Driver, the cause is remanded for additional findings by the trial court.

### Conclusion

The trial court's judgment is reversed and the cause remanded with directions to admit the breath test result and for further proceedings consistent with this opinion.

Roy L. Richter, J., and Colleen Dolan, J., concur.