

# In the
# Missouri Court of Appeals
# Western District

MICHAEL STEHWIEN,

                Appellant,

v.

DIRECTOR OF REVENUE,

                Respondent.

**WD82574**

**OPINION FILED:**

**February 11, 2020**

Appeal from the Circuit Court of Lafayette County, Missouri
The Honorable Kelly Halford Rose, Judge

Before Division One:
Thomas N. Chapman, P.J., Mark D. Pfeiffer, and Anthony Rex Gabbert, JJ.

Michael Stehwien appeals the judgment of the Lafayette County Circuit Court sustaining the revocation of his driving privilege. He claims in one point on appeal that the breath test results were not admissible because the breath testing machine was not subjected to proper maintenance and reporting. The judgment is affirmed.

## Factual and Procedural Background[1]

On April 29, 2018, at approximately 0320 hours, Trooper Beau Ryun, of Missouri State Highway Patrol, Troop A, was dispatched to the area of I-70 near the 35 mile marker regarding a black truck driving all over the roadway and into the median. Deputy B. Hotmer, of the Lafayette County Sheriff's Department, observed the truck travel over the center line of the roadway, and initiated the stop in Lafayette County. Trooper Ryun arrived on the scene shortly thereafter (at 0328 hours) and contacted the driver, Michael Stehwien.

Trooper Ryun observed that Stehwien's eyes were bloodshot, watery, and glassy; that his speech was slurred; and that there was a strong odor of alcohol coming from his breath. Stehwien admitted drinking beer, and rated his own intoxication level at a five on a scale of one to ten (with ten being the most impaired). Trooper Ryun administered the Horizontal Gaze Nystagmus test (which he scored six of six clues, indicating intoxication) and the preliminary breath test (that was positive for the presence of alcohol).

Stehwien was arrested for DWI and transported to the Ray County Sheriff's Department. After being advised of the implied consent law, Stehwien agreed to submit to a breath test of his blood alcohol level. The breath test was performed using the Intox DMT, Serial Number 500052, and was administered by Trooper Ryun, who possessed a Type III permit authorizing him to operate the Intox DMT. The breath test indicated that Stehwien's blood alcohol content (BAC) was .187 percent. Trooper Ryun followed the steps contained in the operational checklist; certified that there was no deviation from the procedures approved by the Department

---

[1] "We view the evidence in the light most favorable to the judgment and where the facts relevant to an issue are contested, deference is given to the circuit court's assessment of that evidence." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo. App. W.D. 2012) (internal quotation marks omitted).

of Health and Senior Services; and determined that (to the best of his knowledge) the instrument was functioning properly.

The Intox DMT, Serial Number 500052, which was used to administer Stehwien's breath test, had been previously transported to Jefferson City, Missouri, where it was upgraded by replacement of its dry gas regulator. Jimmy Cleveland, who possessed a Type II Permit, replaced the regulator, adjusted the settings, and conducted a maintenance check of the machine on April 24, 2018. In his April 24, 2018 maintenance report, Cleveland noted: "Standard change performed. Dry Gas regulator replaced, and settings adjusted. Stepper motor tension adjusted." The machine was then transported back to the Ray County Jail.

Trooper John Tyler Cunningham, who also possessed a Type II Permit, conducted a maintenance check on the machine the next day, April 25, 2018. The instrument was tested and certified as operating in compliance with Department of Health and Senior Services regulations. Trooper Cunningham testified that he did not make any alterations or modification to the instrument in conducting his maintenance check, and therefore did not note any alterations to the machine. He merely placed the instrument back in service, and indicated: "Return to Service @ Ray Co Jail."

The machine was then used to analyze Stehwien's BAC on April 29, 2018, which indicated his blood alcohol content level was .187 percent. The Director of the Missouri Department of Revenue ("Director" or "Department") subsequently served Stehwien with a Notice of Revocation of Driving Privilege. Stehwien requested and received a trial *de novo*.

The trial court found that Trooper Ryun followed the steps on the operational checklist without deviation and in compliance with the Department of Health regulations regarding breath

alcohol testing as outlined in 19 Code of State Regulations, Division 25, Chapter 30. The trial court further found that Stehwien's breath was tested on an approved instrument by a possessor of a valid Type III Permit issued by the Missouri Department of Health, that all relevant Department of Health regulations were followed by the testing officer, and that maintenance on the breath test instrument was properly performed within 35 days prior to the test of Stehwien's breath. The trial court concluded that the breath test result was accurate, reliable, and valid, and sustained the revocation of Stehwien's driving privilege. This appeal follows.

## Standard of Review

"As in any court-tried civil case, in a driver's license suspension case, this Court must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Harvey*, 371 S.W.3d at 826 (internal quotation marks omitted). "We view the evidence in the light most favorable to the judgment and where the facts relevant to an issue are contested, deference is given to the circuit court's assessment of that evidence." *Id.* (internal quotation marks omitted). "When facts are not contested and the issue is one of law, our review is *de novo,* and no deference is given to the trial court's determination." *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016) (internal quotation marks omitted).

## Analysis

In his sole point on appeal, Stehwien claims the trial court erred in sustaining the Director's revocation of his driving privilege. He claims the breath test machine was not subjected to proper maintenance and reporting; he concludes that the breath test results were not admissible.

4

"The Department may suspend or revoke a driver's license upon a determination that the driver was arrested upon probable cause for driving while intoxicated." *Ridgway v. Dir. of Revenue*, 573 S.W.3d 129, 133 (Mo. App. E.D. 2019) (citing § 302.505.) "The driver may then seek review of the suspension or revocation through a trial *de novo*." *Id*. (citing § 302.535.1). "At the trial *de novo,* the Department must prove by a preponderance of the evidence there was probable cause to arrest the driver for driving while intoxicated and that the driver's blood alcohol concentration ["BAC"] was .08 percent or more." *Id*. Stehwien does not argue that there was a lack of probable cause to arrest him for driving while intoxicated. Instead, his argument pertains solely to whether the results of the breath test should have been admitted into evidence and, thus, whether the Department proved that his blood alcohol concentration was .08 percent or more.

"Foundational prerequisites for admission of blood alcohol test results are: (1) the test was performed by following the approved techniques and methods of the Department of Health; (2) the operator held a valid permit; and (3) the equipment and devices were approved by the Department." *Kern v. Dir. of Revenue, State of Mo.*, 936 S.W.2d 860, 861 (Mo. App. E.D. 1997). "If a proper and timely objection is made to the admission of the blood alcohol analysis, Director must present proof of a maintenance check performed within 35 days prior to the test." *Id*. (internal quotation marks omitted). [2] "The Department of Health's regulation requires that

---

[2] Respondent posits that Stehwien did not preserve his objection to the admission of the breath test results. However, in the transcript, when Exhibit A (which included the breath test results) was offered into evidence, counsel for Stehwien indicated "Judge, no objection subject to proper foundation for the maintenance of the breath test." Counsel for Stehwien then cross-examined the testifying officer regarding the maintenance report. In closing, counsel for the Director indicated "The only thing I would say, Your honor, is that obviously the Court sees where the issue is here with regard to the maintenance…" and goes on to make arguments similar to those on appeal, as did Stehwien's counsel. In its judgment the trial court indicated that the "breath test was taken under advisement subject to a foundation objection regarding whether maintenance was proper." "All that is required of any objection to evidence is that the objection be sufficiently clear and definite that the court will understand the reason for the

maintenance checks be performed at intervals not to exceed 35 days and when: (1) a new instrument is placed into service; (2) the instrument has been put in a new location; or (3) the instrument has been repaired or recalibrated." *Id*. "Maintenance checks are defined as standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by the Department of Health." *Id*. (internal quotation marks omitted). "The check is designed to ensure the machine is operating properly when a blood alcohol analysis is performed." *Id*. at 862. "Consequently, the purpose of the maintenance check requirement is to guarantee reliability of a particular test result." *Id*.

The testimony at trial, explicitly found to be credible by the trial court, was that the breath test machine had been upgraded in Jefferson City by Jimmy Cleveland, who then conducted a maintenance check on April 24, 2018. In his maintenance report, Cleveland noted the changes to the Intox DMT, Serial Number 500052, and noted that the instrument operated satisfactorily and within established limits.

Trooper John Tyler Cunningham also conducted a maintenance check on the machine on April 25, 2018; and in his report, noted its return to service; and certified it as operating in compliance with Department of Health and Senior Services regulations. Four days later (on April 29, 2018) the subject breath test machine was used to examine Stehwien's blood alcohol content.

---

objection." *Williams v. Bailey*, 759 S.W.2d 394, 397 (Mo. App. S.D. 1988). The trial court clearly understood that Stehwien objected to admission of the breath test results on the basis that the machine was not properly maintained. The Department now argues that the issue was waived because Stehwien did not later object to the admission of the maintenance reports. "[W]here, as here, it was mutually understood that appellant did not intend to repudiate his prior objection, this Court will likewise acknowledge its continued validity." *State v. Baker*, 103 S.W.3d 711, 717 (Mo. banc 2003). Objection to the admission of the breath test results was preserved for appellate review.

Stehwien complains on appeal that the maintenance report written by Trooper Cunningham did not list what Cleveland did to the breath machine before the machine was put back into service. Stehwien claims that Trooper Cunningham left changes to the machine out of the in-service report and thereby violated the regulations.

However, Trooper Cunningham testified that he made no changes to the machine; and that he merely received the machine back after Cleveland had made changes to the machine in Jefferson City. Given that, Trooper Cunningham performed a maintenance check on the machine and indicated that the machine was being put back into service. He did not list any changes in his April 25, 2018 maintenance report because he made no changes to the machine.

Stehwien argues that Cleveland's April 24, 2018 maintenance report is not a valid maintenance report, because he did not put the machine back into service. Stehwien asserts that the maintenance report is required to be filled out only after repairs or service were completed *and* the machine was put back into service. He concludes that Trooper Cunningham, as the person who put the machine back into service, was required to identify the changes that Cleveland made to the machine.

The regulations do not support Stehwien's argument. Instead, 19 C.S.R. 25-30.031(3) states in relevant part:

> (3) A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days. The permittee shall retain the original report of the maintenance check and submit a copy of the report so that it shall be received by the department within fifteen (15) days from the date the maintenance check was performed. In addition, maintenance checks shall be completed when—
>
> (A) A new instrument is placed into service; *or*
>
> (B) The instrument has been serviced, repaired, or recalibrated.

7

(emphasis added). This regulation requires that such maintenance checks be performed at intervals not to exceed 35 days and when: (1) when a new instrument is placed into service; (2) when the instrument has been put in a new location; or (3) when the instrument has been repaired or recalibrated. *Kern,* 936 S.W.2d at 861. [3]

Thus, Cleveland's April 24, 2018 maintenance report that was completed after the machine was serviced was a valid maintenance report as required under 19 C.S.R. 25-30.031(3)(B). It, appropriately, included a report of the services completed.

The report Trooper Cunningham completed on April 25, 2018 was also a valid maintenance report, as required under 19 C.S.R. 25-30.031(3). Cunningham's maintenance report was completed upon placing the subject machine back into service, within 35 days of the previous report, and less than 35 days before Stehwien was tested (on April 29, 2015).

---

[3] 19 CSR 25-30.031(7) requires the use of Maintenance Report #1 for Intox DMT machines:

> For the maintenance checks referred to in sections (3)-(5) of this rule, the appropriate maintenance report form for the specific instrument being checked shall be used--
> (A)  When performing a maintenance check on the Intox DMT, the report incorporated in the instrument software shall be used (see Report No. 1 included herein for example)...

Report #1 provides, in part, as follows:

> Complete this report at the time of the regularly monthly preventive maintenance check (not to exceed 35 days).
> Complete this report whenever the instrument is served or repaired and whenever it is placed into service.

Stehwien asserts that this portion of the approved form (Report #1) imposes additional restrictions on when it should be completed, and, in particular, indicates that it should not be completed upon completion of the service or repair, and should only be completed after service or repair **and** return to service. We disagree. To the contrary, the approved form (Report #1) indicates that there is an obligation to complete the maintenance report "whenever the instrument is serviced or repaired" and a separate obligation to again perform a maintenance report **"whenever it is placed into service."** These are distinct instances when the maintenance report should be completed – after service or repair, and again after the machine is placed in service. This is entirely consistent with the requirements of 19 CSR 25-30.031(3) as to when maintenance reports should be completed. It is also consistent with the purposes of the entire regulation -- to ensure that there would be a report completed upon service or repair, by the person (in this instance Cleveland) familiar with those repairs; and that there should also be a maintenance report completed upon placing the equipment into service (in this instance by Cunningham) to ensure the equipment remains properly calibrated.

8

"The Supreme Court years ago concluded that the only maintenance check that matters—for purposes of establishing the foundational requirement that the breath test was performed on a reliable machine—is the one within 35 days before the breath test." *Carey v. Dir. of Revenue*, 514 S.W.3d 679, 682 (Mo. App. E.D. 2017) (citing *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340 (Mo. banc 1992)). "In reaching that conclusion, the Court noted that the plain language of 19 CSR 25-30.031(3) requires the checks must be performed every 35 days, but that did not mean the Director must present evidence of every one of those checks ever performed on the relevant machine[.]" *Id*. Stehwien conceded at oral argument that the relevant maintenance form is the one immediately preceding the use of the machine to render the BAC at issue. He also conceded that the maintenance form does not have to list all repairs or adjustments from prior maintenance checks.

"A maintenance report showing that a maintenance check was performed within 35 days prior to the driver's breath test is evidence of the foundational requirement that the test was performed according to approved techniques and methods on a reliable machine." *Id*. (internal quotation marks omitted). This requirement was met in this case. The trial court did not err in admitting the BAC results.

### Conclusion

The judgment is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Presiding Judge

All concur.

9